Decided 23 July, 1900.

## WHEELER *v.* LACK.

[ 61 Pac. 849.]

AGREEMENT NOT CONSTITUTING A PARTNERSHIP.

1. An agreement between two persons to divide commissions in case either should furnish to the other any customers to whom sales of property should be made, without any provision for dividing losses or expenses, does not constitute a partnership.

EQUITY JURISDICTION—ACCOUNTING—INSOLVENCY.

2. Where several persons are claiming a fund, or parts of it, and a court of equity has control of such fund, it may restrain the payment thereof until the rights of all the claimants can be ascertained, and then divide it according to their respective rights, especially if some of the claimants are insolvent.

EQUITY—NECESSARY PARTIES—APPEAL.

3. Where equity is attempting to distribute a fund over which it has jurisdiction, all the persons who are known to have an interest in the fund must be brought in, and if it appears that any such person is not a party, the case should be reversed with instructions to bring him onto the record, so that the rights of all claimants may be settled in one decree.

APPEAL—TERMS FOR OMITTING NECESSARY PARTIES.

4. Where a necessary party has been intentionally or carelessly omitted from a suit, the appellate court may either dismiss the case or reverse it on a penalty (such as payment of costs), so that the absent parties may be brought in.

From Baker : ROBERT EAKIN, Judge.

This suit was commenced by John Wheeler on the eighteenth of April, 1899, against F. S. Lack, P. A. Conde, the Eastern Gold Mining Co., the First National Bank of Baker City, R. O. Deming, Charles E. Whitaker, and Butcher & Eastham. The complaint alleges, in substance, that prior to the tenth day of September, 1897,

plaintiff entered into a partnership agreement with defendant Lack, who was at that time a mining broker at Baker City, to the effect that, if he should produce any party or parties to whom Lack might effect a sale of mining property, all commissions and brokerage earned by Lack on account thereof should be divided equally between them; that, under and by virtue of said agreement, large commissions have been earned; that no accounting has been had between plaintiff and Lack, but Lack has ignored the plaintiff's rights, and has endeavored, and is now endeavoring, to appropriate all the commissions so earned to his sole and exclusive use; that plaintiff, in pursuance of said agreement, procured and induced one Zwickey and one Van Zandt to go to Baker City to examine mining property with a view to purchasing for their principal, the defendant Whitaker, and gave them a letter of introduction to Lack, who, at the request of Zwickey and Van Zandt, procured from Deming, the owner of the Baisley-Elkhorn mine, an option thereon for $60,000, it being understood and agreed that the brokerage and commission to be paid Lack for the use and benefit of himself and plaintiff should be the sum of $6,000; that thereafter Whitaker caused the defendant the Eastern Gold Mining Co. to be organized, with himself, Zwickey, and Van Zandt as the principal stockholders, and assigned and transferred to such corporation all his rights under the option mentioned; that, since making the agreement with the plaintiff, Lack has formed a copartnership with the defendant Conde, and, as plaintiff is informed and alleges, transferred or sought to transfer some alleged right, title, or interest in and to the commission or brokerage due under the compact of sale to the defendant W. F. Butcher, of the firm of Butcher & Eastham, and that Conde and Butcher have each conspired and colluded with the defendant Lack to cheat, wrong,

and defraud the plaintiff out of his interest in such commission ; that the sale of the mining property by Deming to the Eastern Gold Mining Co. has been fully completed, and the purchase price paid ; that there is due to the plaintiff herein from Deming, Whitaker, and such company the sum of $3,000, as his share of such commission, but, with full knowledge of his rights, they have attempted to pay the entire commission to the defendants Conde and Lack, by giving them a draft on an Eastern bank or party, to plaintiff unknown, which they have placed with the defendant bank for collection, and it intends to and will turn over the proceeds thereof to Conde and Lack, both of whom are impecunious and insolvent and unable to respond in damages, and against whom a judgment would be wholly worthless and uncollectible ; that plaintiff has demanded of the defendants payment of his share of such commission, but they have each and all wrongfully refused to recognize him in connection therewith, and, unless restrained, the defendant First National Bank and its codefendants will pay to Conde and Lack the full amount of such commission ; that, at the time of the transfer of the mining property, it was stipulated and agreed between Deming and Whitaker that each was to pay one-half of the commission due Lack for making such sale, wherefore the plaintiff demands a judgment against Lack for $3,000, and an order restraining the defendants Conde and Lack, or either of them, from receiving or accepting any part of such amount from any of the other defendants, and that the other defendants be restrained from paying the same to them. The defendants Lack, Conde, the Eastern Gold Mining Co., the First National Bank, and Butcher & Eastham were served with process, and answered jointly, denying the allegations of the complaint. Upon the trial the court found that the agreement between plaintiff and Lack did

not constitute a partnership, but that a court of equity
had jurisdiction to determine and ascertain the interest
of the respective parties in the commission earned by
Lack, and thereupon entered a decree dismissing the suit
as to the First National Bank, Butcher & Eastham, Whit-
aker, and the Eastern Gold Mining Co., and against the
defendants Conde and Lack for $1,250, being one-half of
the amount paid by Deming and Whitaker as. a com-
promise for commissions.   From this decree Conde and
Lack appeal.                     REVERSED ON CONDITION.

For appellants there was a brief over the names of
*Butcher & Eastham* and *Chas. A. Johns,* with an oral argu-
ment by *Mr. W. F. Butcher.*

For respondent there was a brief over the names of *Jas.
A. Fee* and *Smith & Heilner,* with an oral argument by
*Messrs. Fee* and *John J. Balleray.*

MR. CHIEF JUSTICE BEAN, after making the foregoing
statement of the facts, delivered the opinion.

The evidence shows that some time in the winter of
1896 or 1897 the plaintiff and defendant Lack entered into
an arrangement whereby it was agreed that, if plaintiff
should furnish Lack with a customer or customers to
whom he should be able to sell mining property, they
would divide the brokerage; and that a short time there-
after, at the Seven Devils, in. Idaho, the plaintiff met
Zwickey and Van Zandt, who had been sent out by defend-
ant Whitaker to look for mining property for him.   At his
solicitation and upon his request they were induced to
and did go to Baker City, the plaintiff giving them a let-
ter of introduction to Lack, and at the same time advis-
ing him by private letter that they would soon be over

to Baker, and suggesting that he show them such property as he might have for sale. Upon their arrival in Baker, Zwickey and Van Zandt called upon Lack, presented their letter of introduction from the plaintiff, and were shown the Baisley-Elkhorn mining property by him, although he had no option or contract for its sale from its owner. After examining the property, they reported to their principal, Whitaker, who resided in Connecticut, and advised him to come West and examine it for himself. This he did, but, being dissatisfied with the terms and conditions upon which it was offered for sale, as stated by the resident agent of the owner, declined to make the purchase, and returned home. Some time during the following summer, however, he met Deming, the owner, by request, in New York, and an agreement was entered into between them for the sale of the mine for $60,000, which contains a stipulation that the parties thereto are to equally pay Lack whatever commissions may become necessary upon account of the sale, although there was no previous contract or agreement of the parties to pay him any commission whatever. Afterwards, and within the life of the contract, the defendant the Eastern Gold Mining Company was organized, and Whitaker transferred all his rights under the contract with Deming to such company, and on the nineteenth of September, 1898, Deming conveyed to it the mining property in question for $60,000, and received the consideration therefor.

Lack immediately, or soon thereafter, demanded of Deming a commission or brokerage for the sale of the property, and, after considerable correspondence and negotiations, it was arranged in April, 1899, as a compromise, that Lack should be paid $2,500 in full settlement of his claim. In pursuance of this agreement, two drafts for $1,250 each, one on Deming and the other on Whit-

aker, were drawn by the Baisley-Elkhorn Mining Company in favor of the defendant the First National Bank in payment of such amount, and Whitaker was so advised by wire.   These two drafts were delivered by Lack to one Waterman, "to take care of" or "hold until called for," who deposited them with the defendant bank for collection on his own account on the fifteenth of April. Whitaker, preferring, however, to make the settlement of his portion of the commission through Mr. Johns, his attorney, at Baker City, forwarded him by mail a draft on New York for $1,250, with directions to pay Lack upon satisfactory arrangements being made· to protect him from any further claim for commissions, and at the same time notified his local bank to return without payment the draft dated April 15, drawn on him by the Baisley-Elkhorn Mining Company.   The draft from Whitaker was received by Mr. Johns on the twenty-fourth of April, and upon the same day he drew upon Deming, who resides in Kansas (the former draft having been returned unpaid), his personal draft for $1,250, being the half of the commission to be paid by Deming, and deposited it, together with the Whitaker draft, with the defendant bank to his own credit.   Before paying out the money on account of the commissions, Johns required of Lack a bond indemnifying his clients against any further liability on account thereof, which was given, with Waterman as surety.   As a condition to becoming surety, Waterman required the amount coming to Conde and Lack for commissions to be delivered to him to indemnify him against liability.   Johns thereupon, by consent of Lack, drew his personal check on the defendant bank, dated April 24, for $2,400, in favor of Waterman, who on the same day deposited it with such bank to the credit of Waterman & Schmitz, and the finding of the court below is that such commission was in Waterman's hands

at the time of taking evidence in the suit. Upon this state of facts, the principal question is one of jurisdiction.

1. It is argued that a court of equity has jurisdiction because the agreement between the plaintiff and Lack constituted them partners as between themselves. A partnership has been defined to be a contract of two or more competent persons to place their money, effects, labor, skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions. A mere community of interest is not sufficient, nor will an agreement to divide the gross earnings constitute individuals partners. There must be an interest in the profits as profits, and such profits must be shared as the result of the adventure or enterprise in which both are interested, and not simply as a measure of compensation : *Cogswell* v. *Wilson*, 11 Or. 371 (4 Pac. 1130); *Flower* v. *Barnekoff*, 20 Or. 132 (25 Pac. 370, 11 L. R. A. 149). Whether two or more persons are partners as between themselves depends chiefly upon their intention as legally ascertained. Now, when we look at the testimony in this case, we find it clearly shows that the relationship between plaintiff and Lack did not have any of the elements of a partnership. The plaintiff, testifying in relation to the agreement, says : "It was just a little casual conversation we had when writing some letters for him on the typewriter in my room,—just a casual conversation. * * * It was in the winter of '96–7, I guess you would call it, in my room at the Washauer Hotel. Just a casual conversation while writing a letter for Mr. Lack. It was that if I sent a customer to him who bought any property through him, we would divide brokerage,— an agreement to that effect. * * * I don't know whether it emanated from myself or Mr. Lack. I know that he had some customers for a mining property at that time, and I know that I was figuring on

bringing somebody out here ; and it was something like this, that if we happened to send anyone to each other, and any sale was made, that we would simply divide the brokerage.'' The defendant Lack denies this conversation or agreement *in toto* ; but there is other evidence in the case abundantly sufficient to show that he understood plaintiff was to have some part of whatever was received as brokerage on account of the sale of the Baisley-Elkhorn mine, and, indeed, such is the admission of his counsel in their brief. Giving to the testimony of the plaintiff, however, its most favorable interpretation, the agreement did not impose upon him the duties, nor clothe him with the powers, of a partner. There was no joint ownership, according to the intention of the parties. The plaintiff was in no event to participate in the business then being conducted by Lack, or to share in his losses therein. It amounted to nothing more than an agreement that, in the event plaintiff should furnish a customer or customers to whom Lack might make a sale of mining property, they would divide the brokerage, which, as we understand it, would be a division of what might remain after the expenses incident to the transaction were deducted, and not, as the court below seems to have thought, one-half of the gross amount paid as commission. It appears in evidence that Lack was at considerable expense in earning and collecting the commission, and was compelled to pay and agreed to pay a part of it to other parties in order to collect it at all ; and it would be manifestly unfair to require him to bear all such expenses out of his half, and pay to the plaintiff, who was at no expense whatever, the other half. We conclude, therefore, that the allegations of the complaint that plaintiff and Lack are partnres are not sustained by the testimony, and hence that he is not entitled to an accounting for that reason : *Salter* v. *Ham*, 31 N. Y. 321.

2.  But there is another ground upon which the jurisdiction of a court of equity may be sustained.  The complaint alleges and the evidence shows that Conde and Lack are both insolvent and unable to respond to a judgment at law, so that, if the money in payment of the commission in question ever reaches their hands, it will probably be impossible for the plaintiff to enforce the payment of any claim he may have thereon.  The fund is now, or was at the trial, on deposit in the defendant bank ; and, as such bank was a party to this suit, the court had sufficient jurisdiction of the specific fund to ascertain and adjust the rights of the several persons entitled to participate therein, and this is a familiar ground for equitable interference.  See 1 Pomeroy, Eq. Jur. (2 ed.) § 186.

3.  But there is an insurmountable objection to proceeding to a final decree at this time.  Waterman, to whom the commission was in fact paid, and who deposited it in the bank, and who, perhaps, has some claim or interest therein, is not a party ; and, where a proceeding in equity concerns the disposal of a specific fund, a person claiming the fund is an indispensable party :  15 Enc. Pl. & Prac. 622 ;  *Williams* v. *Bankhead*, 86 U. S. (19 Wall.) 563, 22 L. Ed. 184.  Now, as a general rule, a bill in equity will not be dismissed for want of parties unless they were omitted in bad faith, or unless it would be dismissed if they were before the court ; but, however and whenever the objection is raised, the bill will ordinarily be allowed to stand over upon terms, in order to afford the complainant an opportunity of bringing in the necessary parties :  15 Enc. Pl. & Prac. 690.  And Section 41 of Hill's Ann. Laws is intended to cover such an emergency.  It provides :  '' The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by

saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in." Under a similar statute, it has been held that, when a complete determination of the controversy cannot be had without the presence of other parties, it is the imperative duty of the court to direct that they be brought in; and this although the defect of parties appears upon the face of the complaint, and the defendants fail to demur or raise the objection in their answer: *Shaver* v. *Brainard*, 29 Barb. 25. Mr. Pomeroy, in discussing the question, says: "If there are other persons, not parties, whose rights must be ascertained and settled before the rights of the parties to the suit can be determined, then the statute is peremptory. The court must cause such persons to be brought in. It is not a matter of discretion, but of absolute judicial duty. The enforcement of this duty does not rest entirely upon the parties to the record. If they should neglect to raise the question and to apply for the proper order, the court, upon its own motion, will supply the omission, and will either directly bring in the new parties, or remand the cause in order that the plaintiff may bring them in:" Pomeroy, Rem. & Rem. Rights, § 419. There could be no question, therefore, about the proper practice, if we were sitting as a court of original jurisdiction; and there seems to be abundant authority for an appellate court to reverse a cause for want of necessary parties, and remand it to the court below in order that they may be brought in: 15 Enc. Pl. & Prac. 692; 1 Beach, Mod. Eq. Prac. § 78; *King* v. *Commissioners' Court*, 10 Tex. Civ. App. 114 (30 S. W. 257); *Morgan* v. *Blatchley*, 33 W. Va. 155 (10 S. E. 282); *Jones* v. *Vantress*, 23 Ind. 533; *Webber* v. *Taylor*, 5 Jones' Eq. 36; *Shaver* v. *Brainard*, 29 Barb. 25. But such an order should not be made

in this case, except on payment by the plaintiff of the costs of this appeal. The plaintiff was apprised early in the trial that Waterman had or claimed some interest in the fund, and was therefore an indispensable party to the suit, but made no application to have him brought in. Upon payment by the plaintiff of defendants' costs on this appeal within sixty days, the decree will thereupon be reversed, and the cause remanded to the court below, with leave to the plaintiff to apply to that court for permission to amend his complaint by making Waterman, or any other person or persons who may have or claim some interest in the fund, a party, and for such other or further proceedings as may be proper; otherwise, the complaint will be dismissed without prejudice.

Reversed on Condition.