Submitted on briefs October 1, 1928, affirmed February 13, rehearing denied March 19, 1929.

VICTOR BLOECH *v.* HYLAND HOMES COMPANY, ET AL.

(274 Pac. 318.)

For appellants there was a brief over the names of *Mr. Edward E. Gray* and *Messrs. Norblad & Hesse.*

For respondent there was a brief over the name of *Messrs. Lewis, Lewis & Finnigan.*

RAND, J.—Ths is a suit to enforce an alleged trust growing out of a written contract for the sale of Lot 8, Block 41, Taylor's Addition to the City of Astoria. The written contract was entered into by defendant, Hyland Homes Company, a corporation, and plaintiff on January 11, 1917. Subsequently, and on March 3, 1920, said defendant conveyed said lot to the defendants, Edward E. Gray and Edna Ida Gray, husband and wife, and the deed was placed of record on March 16, 1920, by said grantees, who now hold the legal title thereto.

This is the second time this case has been appealed to this court. The first was an appeal by plaintiff from an order and decree of the Circuit Court sustaining a demurrer to the second amended complaint and resulted in a reversal. See *Bloech v. Hyland Homes Co.*, 119 Or. 297 (247 Pac. 761). Defendants now appeal from a decree decreeing that Edward E. Gray and Edna Ida Gray hold the legal title to said lot in trust for plaintiff.

The material facts are as follows: In the fall of 1916, the Hyland Homes Company, the defendant corporation, while engaged in the construction of three houses in the City of Astoria, entered into a parol contract with plaintiff in which it was stipulated that plaintiff should furnish the work and material for painting and tinting said houses and was to be paid therefor the sum of $700. Plaintiff entered into the performance of the contract and after completing a considerable portion of the work requested defendant to pay for the work done and was informed by said defendant that it had no money with which to

pay the same and thereupon the defendant corporation offered to enter into a written contract to convey the lot in question to plaintiff upon plaintiff's completion of the work and, at the same time, offered to advance to plaintiff the sum of $150 to apply upon other work to be furnished by defendant. This offer was accepted and the written contract in question was entered into. On its face, it recites that the contract was entered into on August 1, 1916, and that it was not executed or signed by either party until January 11, 1917. So far as material here, the written contract provides:

"That for and in consideration of a warranty deed to Lot 8 (eight) Block 41 (Forty-one) Taylors Astoria according to the recorded plat thereof and the sum of One Hundred and Fifty (150) dollars in hand paid, receipt of which is hereby acknowledged by the party of the second part,

"The said second party agrees to do all painting and tinting * * of three houses (describing them) in a workmanlike manner and to the satisfaction of the party of the first part; and further agrees to do such additional work as the said party of the first part may designate in the sum of One Hundred and fifty (150) dollars. Should such additional work not be ordered or arranged for by the time of the completion of the three houses above described, then said party of the second part shall repay to said party of the first part the said sum of One hundred and fifty (150) dollars at which time the aforementioned warranty deed together with a receipt in full for the payment of all street improvements shall be issued by the said party of the first part to the party of the second part."

Pursuant to said written contract, the defendant corporation gave plaintiff a check for said sum of $150, which check, when presented, was not paid for

want of funds. The amount, however, was subsequently paid in cash. There was a delay by the corporation in the construction of the houses and this delay prevented plaintiff from completing his contract until the fall of 1918, at which time the work contracted to be performed by plaintiff was fully completed. The defendant furnished no additional work upon which the $150 paid plaintiff was to apply and at the commencement of the suit that sum of money was tendered into court to be paid over to defendants upon plaintiff's obtaining the relief demanded in the complaint. The defendant corporation became insolvent and failed to pay its annual license fees and, on account thereof, was dissolved by proclamation of the Governor. During its existence, George M. Hyland was president and general manager of the corporation and in control of its affairs and his wife was the secretary thereof. If anyone else had any interest in the corporation, the record fails to disclose that fact. Before plaintiff's performance of the contract Hyland had removed from Astoria and for some time thereafter plaintiff was unable to ascertain his whereabouts. Nothing has been paid to plaintiff for his performance of the work in painting the three houses mentioned in the contract and, so far as he is concerned, he has completely performed his contract. The defendant Edward E. Gray is an attorney at law and resides in the City of Astoria. According to his testimony he purchased Lot 7, Block 41, which adjoins the premises in controversy in September, 1919, and has since resided there. He testified that, after purchasing Lot 7, he decided that he wanted more ground and first contemplated the purchase of Lot 6, which adjoins him on the north. But after looking it over it had too much

slope and was too rocky to answer his purpose. He then examined the lot in controversy and concluded to purchase it. He then inquired as to its ownership and was informed that it belonged to plaintiff. He testified that he then went to plaintiff and offered to pay him $1,000 in cash for the lot and was informed by plaintiff that he had a deed for the lot but that he refused to sell. Plaintiff's testimony is that he informed Gray that he did not have a deed for the lot but that he had a contract for its purchase from the Hyland Homes Company. Shortly thereafter, Mr. Gray met Hyland and told him about his attempt to purchase the lot from plaintiff and was informed by Hyland that plaintiff had not performed his contract to the satisfaction of Hyland and that the contract had been forfeited by plaintiff and that Hyland advised him to examine the record and stated to him that the record would show that the Hyland Homes Company was the owner of the record. That he then examined the record and found that the title was in the Hyland Homes Company and that he then purchased the lot from the Hyland Homes Company and received a deed therefor upon payment to the Hyland Homes Company or Hyland of the sum of $150 in cash and promising to pay in legal services and cash $850 in all for the lot. His testimony in respect thereto is as follows:

"So Mr. Hyland said that he would sell me this property for Seven Hundred Dollars. I forget just at the present what the part payment was, the amount I was to pay down for the lot. I believe I actually paid down One Hundred and Fifty Dollars on the lot, with the understanding there would be no strings attached to the deal, for I wanted a clear title to the property.

"It was further agreed that my legal services for the company were to apply on the purchase price of the property. I also agreed with Mr. Hyland at that time that I would reimburse him—I believe it was to the amount of Eight Hundred and Fifty Dollars, less the amount I had paid on the lot, and less my amount of legal services—that I would reimburse him to that amount, or to any amount up to that amount, or to any amount up to that, in case Victor Bloech sued. Mr. Bloech had stated that he was going to sue, and that he knew that he could not get more than the original contract price, but that he was going to sue for One Thousand Dollars, and I agreed that I would reimburse the Hyland Homes Company up to the amount of Eight Hundred and Fifty Dollars, in that event, less what I paid in cash and less what I had earned in services as attorney for the Hyland Homes Company.

"So I took the property and prepared a written notice of the cancellation of the contract between Mr. Bloech and the Hyland Homes Company, and I myself put it in the mail-box, addressed to Mr. Victor Bloech."

Upon hearing that the plaintiff had stated that Hyland and Gray "were cheating him out of his money and lot," Gray wrote a letter to plaintiff stating:

"that the Hyland Homes Company was then out of business, and I was acting for them and trying to sell their property for them at almost any price, and that I had the authority as their attorney to make any arrangements with Mr. Bloech within reason in regard to settling this matter—even to deeding him a more valuable piece of property."

Plaintiff then came to Gray's office to see him and he then told plaintiff "You can't claim that lot," stating that: "if he would return that One Hundred and Fifty Dollars to the Hyland Homes Company, in

accordance with his agreement, we could very probably straighten the matter out by deeding him another lot, and Mr. Bloech stated that he would not return the money, but that the Hyland Homes Company owed him at least Three Hundred Dollars, instead of the One Hundred and Fifty Dollars.'' There is other testimony in the record introduced by the defendant Gray showing that Gray bought the lot with full knowledge of plaintiff's contract and relying entirely upon representations made to him by Hyland, and that under said representations Gray firmly believed that plaintiff had not completely performed his contract and that his contract for the purchase of the lot was not enforceable. But under the testimony in the case we are firmly convinced that plaintiff did perform his contract and at the time Gray bought the lot plaintiff was entitled to a deed and that Gray's reliance upon the representations made by Hyland was at his peril and that if a more thorough investigation had been made by Gray of the facts of the case, he would have been fully apprised of plaintiff's equities in the property.

1. Upon the former appeal it was contended that the description contained in the contract was not sufficiently definite and certain to identify the lot and, therefore, the contract was unenforceable. The contract described the lot and block by their respective numbers which were followed by the words ''Taylors Astoria according to the recorded plat thereof,'' without stating the county and state. This description was held to be sufficient and it was also held that the contract was valid. These holdings have become the law of the case and as nothing has been shown to have been done since, we have a valid written contract requiring the owner of the lot to convey it to

plaintiff and a subsequent purchase of it by Edward E. Gray and Edna Ida Gray in violation of the contract and with knowledge of its terms and of plaintiff's equities in the property.

2. The rule is that a purchaser with notice of a prior contract to sell takes subject to such contract and is bound in the same manner as his vendor to carry it into execution: 2 Pomeroy's Equity Jurisprudence (3 ed.), § 688, and authorities cited. Under this rule, the defendants Edward E. Gray and Edna Ida Gray, having purchased the lot with notice of the Hyland Homes Company's contract to convey to plaintiff, stand in the same relation to the property that the Hyland Homes Company would if it had made no conveyance of the property and are bound in the same manner and to the same extent to carry out the contract that the company would have been if it had not conveyed the lot to them.

3. The attempt of the Hyland Homes Company to rescind the contract after its performance by plaintiff, as evidenced by the writing prepared and mailed by the defendant Edward E. Gray as attorney of the Hyland Homes Company, was a mere nullity. It was not assented to by plaintiff and the transaction was not one which could result in a rescission of the contract. At that time the Hyland Homes Company was obligated to convey the lot to plaintiff and it could not be released from its obligations without the consent of plaintiff. There is no such thing as a rescission of a contract after performance by one of the contracting parties unless the party who has performed, either expressly or impliedly, consents thereto. The whole evidence shows that plaintiff has been paid nothing for his work and has never consented to a cancellation of the contract. It was not

a case where the contract was wholly executory on both sides and one party refused to perform and his refusal amounted to an abandonment of the contract and the other party, because of such default, elected to rescind the contract. Here the contract had been fully performed by plaintiff and plaintiff has never consented to release or discharge the Hyland Homes Company from its obligation to perform. The law governing the rescission of contracts and the remedies available to the injured party where the other repudiates the contract were accurately stated by Mr. Chief Justice EAKIN in *Armsby* v. *Grays Harbor Commercial Co.,* 62 Or. 173 (123 Pac. 32), and need not be restated here. Under the principles announced in that case, defendants' attempt to rescind the contract was wholly ineffectual and invalid and plaintiff would be entitled to sue the Hyland Homes Company for specific performance of the contract if the land had not been conveyed and, since its grantees took the legal title with notice of the contract, they are bound to perform the same as their grantor would have been if the land had not been conveyed to them.

4. Defendants, however, contend that the promise to convey contained in the written contract is not enforceable because not supported by a consideration. Their argument is that because plaintiff had obligated himself by a verbal contract to perform the work, his subsequent promise in the written contract to do the work which he was bound to do could not be a consideration for a promise of the Hyland Homes Company to convey the lot to him. This merely amounts to the contention that the Hyland Homes Company, having obligated itself to make a money payment for the performance of the work, could not, even with the consent of its creditor, sub-

stitute something else as payment for the work and that, if it did so, there would be no consideration for its new promise. They cite in support of this contention *Smith* v. *Foster*, 5 Or. 44, and *Bush* v. *Abraham*, 25 Or. 336 (35 Pac. 1066), where it was held that an agreement to substitute any other thing in lieu of the original obligation is void unless mutually carried into execution. That principle has no application to the facts in this case because the agreement to substitute the land in lieu of a money payment was mutually carried into execution by entering into the written contract, where one of the parties to the contract agreed to convey the land and the other party agreed to accept the land as payment. In the last case cited, Mr. Chief Justice LORD said:

"* * * if the defendant chose to enter into an agreement with the company to accept something else than money, though of less value, in satisfaction and discharge of the company's notes, it would, when consummated, be a substituted payment, and as effectually extinguish such notes as though payment had been made in money."

The consideration for the Hyland Homes Company's promise to pay plaintiff in land instead of money was the plaintiff's cancellation of the Hyland Homes Company's obligation to pay plaintiff in money and the substitution of its promise to pay in land instead of money. Until the written contract was entered into, plaintiff's remedy for failure of the Hyland Homes Company to pay for the work was the recovery of a money judgment. After entering into the written contract, his remedy was to compel a performance by a conveyance of the land. The agreement to accept the land as payment in lieu of money was a sufficient consideration for the promise

of the Hyland Homes Company to pay its indebtedness to plaintiff by a conveyance of the land.

5. After obtaining a deed to the lot, the evidence shows that the grantees expended a considerable amount of money in improving the lot, amounting, as they say, to about $700. These expenditures were made with full knowledge of plaintiff's rights in the premises. Having bought the land with notice of a prior contract to convey the land to plaintiff, they could not defeat plaintiff's right to a conveyance by expending money upon the lot, having, as they did, knowledge of plaintiff's prior equities in the lot.

6. We find no merit in the contention that plaintiff has been guilty of laches. His contract was not completely performed until the fall of 1918, he having been delayed in completing the contract by the owner's failure to complete the buildings so that the work could be performed. Between that date and March 3, 1920, when defendants purchased the property, according to plaintiff's testimony, Hyland left Astoria and his whereabouts were unknown. This suit was commenced on January 16, 1922. When plaintiff first ascertained that the lot had been conveyed is not shown by the record. There is nothing to show that the delay in bringing the suit was unreasonable or has worked any injury to the defendants.

7, 8. Defendants also contend that the repayment of the $150 advanced to plaintiff by the Hyland Homes Company was a condition precedent without which plaintiff was not entitled to a conveyance. We find no merit in this contention. Upon completion of the work, plaintiff became entitled to a conveyance of the property and at the same time, upon tender of such conveyance, the Hyland Homes Company became entitled to repayment of the money. The obligation of

plaintiff to repay and the obligation of the Hyland Homes Company to execute and tender a deed were concurrent obligations and neither party could be put in default until one had made the tender and the other had failed to perform. At the commencement of this suit, plaintiff tendered into court said sum of $150 to abide the result of the suit. This, we think, was a sufficient performance upon his part of his duty to repay said sum.

There is some conflict in the evidence between the testimony of plaintiff and the testimony of George M. Hyland, president of the defendant corporation, as to whether the work, when performed, was satisfactory to the company. In one part of his deposition, Hyland testified that the work was unsatisfactory and, because thereof, the company rescinded the contract, while in another part of his deposition he testified that, after the completion of the work, he was ready and willing to convey the lot to plaintiff and offered to do so and that plaintiff declined to repay the money which had been advanced to him. This evidence was flatly contradicted by plaintiff and we are satisfied from the evidence that plaintiff had been at all times before commencing the suit ready, able and willing to repay the money if he could obtain a deed.

We have given this case careful consideration and are satisfied that it was proper for the trial court to require the defendants to execute a deed to plaintiff for the lot in question and, upon their failure to execute such deed, to decree that the decree should stand in lieu of such deed as a conveyance of the lot. For the reasons stated, the decree of the lower court is affirmed.　　　　AFFIRMED.　REHEARING DENIED.