Argued March 3, reversed and remanded April 17, petition
for rehearing denied May 13, 1975

VANDEVENTER ET UX, *Appellants, v.* DALE
CONSTRUCTION COMPANY ET AL, *Respondents.*

534 P2d 183

*Floyd Hinton,* Portland, argued the cause for appellants. With him on the briefs were Deich, Deich and Hinton, Portland.

*Mark S. Dodson,* Portland, argued the cause for respondent Amfac Mortgage Corporation. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, and Oglesby H. Young, Portland.

*Ralph Bolliger* of Myatt, Bolliger & Hampton, P.C., Beaverton, argued the cause and filed the brief for respondent Dale Construction Company.

Before McAllister, Presiding Justice, and Denecke, Tongue, Howell and Bryson, Justices.

TONGUE, J.

This is a suit for specific performance by the purchasers of a house and lot against both the seller of the house and the mortgage company which allegedly reneged upon a loan commitment to provide funds for the purchase of the house. Both defendants filed demurrers to the complaint, which were sustained. Plaintiffs appeal.

The complaint alleges that plaintiffs entered into an earnest money agreement with defendant Dale Construction Company for the purchase of a lot and house which Dale was to build. That agreement, dated January 2, 1973, provided for a purchase price of $31,500, of which $1,650 was paid down and the balance "payable as follows: Transaction subject to purchaser qualifying for a Federal VA loan, in the amount of $29,850."

The complaint then alleges that in February 1973 plaintiffs were qualified by the Veterans Administration for such a loan; that defendant Amfac Mortgage Corporation "agreed to make said VA approved home mortgage loan to plaintiffs in the sum of $29,850.00 at 7% per annum for 30 years, and agreed to hold said sum for the benefit of defendant, Dale Construction Company," and that Dale, in reliance upon that loan commitment by Amfac, proceeded to build the house substantially completing it by June 8, 1973.

The complaint goes on to allege that plaintiffs, in reliance upon the Amfac commitment to make the loan and upon the agreement by Dale to execute a deed to the property, did the following: (1) "surrendered" their former house and moved into the new

house; (2) paid an additional $1,000 for carpeting and also, at additional cost, installed a built-in dishwasher and extra lighting fixtures; (3) had the property landscaped and built a sidewalk to the garage, and (4) executed and delivered to Amfac a trust deed note and trust deed, and paid the sum of $1,075 for loan closing costs. Plaintiffs also allege that they "performed all conditions previously required of them by defendants." Finally, the complaint alleges that Amfac refused to "conclude said loan as agreed upon," and that Dale refused to convey title.

The prayer of the complaint is to require Amfac to provide the funds; to require Dale to convey title, and for "Such other further relief as the Court may deem just and equitable."

The demurrers were based upon the ground that the complaint failed to state a cause of suit against either defendant.

1. *Under the facts alleged, plaintiffs were entitled to specific performance of the Amfac commitment to make the loan.*

As contended by Amfac, it is the general rule that equity will not compel specific performance of an agreement to lend money, citing Pomeroy, Specific Performance of Contracts 131-32, § 48 (3d ed 1926). The reason for that rule, according to Pomeroy, is that the breach of such a contract "can always be fully compensated by damages."

■ It has been recognized, however, that there may be cases in which the loss to the borrower resulting from the refusal by a lender to make good on an agreement to make a loan may be such as to be not "fully" compensable by an award of money damages. Thus, in *Columbus Club v. Simons*, 110 Okla 48, 236 P 12, 41 ALR 350 (1925), the plaintiff, in reliance upon an agreement by the defendant to loan $125,000 to build

a new clubhouse, sold its existing clubhouse; purchased lots on which to build the new clubhouse; entered into a contract for the construction of the new clubhouse; and made purchases of personal property and other preparations. The court in *Columbus,* although recognizing the general rule, held (236 P at 15) that there may be circumstances and conditions such as to require an exception to the rule, as when "there is no basis on which a jury can estimate the damages," and that the circumstances of that case were such as to come within an exception.

■ We believe that the circumstances of this case, although somewhat different than those in *Columbus* are also sufficient to come within that exception to the general rule. See *Cuna Mutual Insurance Society v. Dominguez,* 9 Ariz App 172, 450 P2d 413 (1969), 5A Corbin on Contracts 167-68, § 1152 (1964). Cf. *Kent v. Walter E. Heller & Company,* 349 F2d 480, 481, 483 n. 3 (5th Cir 1965); *Southhampton Wholesale F. Term. v. Providence P.W. Co.,* 129 F Supp 663, 664 (D Mass 1955); and *Steward v. Bounds,* 167 Wash 554, 9 P2d 1112, 1116 (1932).

As stated in *Coppock et al v. Roberts,* 116 Or 253, 263, 240 P 886 (1925), although under different facts (quoting with approval from another case):

" 'The fact that a party can avail himself of a remedy in a court of law will not preclude him from obtaining relief in a court of equity unless the legal remedy in respect to the final relief and the mode of securing it, is as efficient as the remedy which a court of equity can afford under the same circumstances: [citing other Oregon cases].' "

In addition to giving up their home, moving into the new house and incurring additional expenses, plaintiffs also point out, and ask this court to take judicial notice, that during 1973 interest rates on home loans were increasing rapidly. Therefore, plaintiffs

argue, not only would they have suffered additional loss if required to seek another loan at an increased rate of interest, if they could afford to do so, but they might well have found it necessary to sell the house before the 30-year loan was paid and the value and resale price of the house would be substantially greater if sold subject to a trust deed or mortgage at an interest rate of seven percent, as agreed upon with Amfac, than if subject to a trust deed or mortgage at a higher rate of interest. In addition, plaintiffs point out that this is not a case involving specific performance of a wholly unexecuted contract, but that plaintiffs partially performed their contract with Amfac by payment of $1,075 in loan closing costs and by the execution of the note and trust deed. See Fry on Specific Performance 24-25, § 54 (6th ed 1921).

Defendant Amfac concedes that interest rates on home loans were rising rapidly during 1973. Indeed, it appears that this was the reason for its refusal to proceed with its agreement to make the loan at an interest rate of seven percent. Amfac contends, however, that it is unfair to confer that benefit upon plaintiffs and to require Amfac to make a loan at a lower rate of interest than the rate prevailing at the time when the house was completed. In our judgment, however, that was a risk which was assumed by Amfac when it agreed to make the loan at an interest rate of seven percent.[1]

We agree with plaintiffs that under the facts and circumstances as alleged in this case it would be extremely difficult, if not impossible, for a jury to estimate with any substantial accuracy the amount of the loss sustained by plaintiffs if they were required

[1] It is also contended by Amfac that there was no "unequivocal" acceptance by Amfac of plaintiffs' loan application so as to result in a binding contract. We must assume, of course, that on trial plaintiffs are able to prove the allegation that they had a firm agreement with Amfac to make the loan on the terms alleged in the complaint.

to either move out of the house and seek another house, or to secure another loan, at a higher rate of interest, and subsequently sell the house subject to a loan at a higher rate of interest.

For these reasons we hold that plaintiffs' complaint alleged facts sufficient to entitle them to a decree of specific performance against defendant Amfac and that it was error for the trial court to sustain the demurrer of Amfac.

2. *Under the facts alleged, no separate cause of action was stated against defendant Dale.*

■ Defendant Dale contends that its demurrer upon the ground that the complaint did not state sufficient facts to constitute a cause of suit against Dale was properly sustained on that ground because plaintiffs are not entitled to specific performance of the earnest money agreement to sell the house for the reason that the complaint does not allege that plaintiffs either paid or tendered payment of the purchase price, citing *Bloech v. Hyland Homes Co. et al,* 128 Or 292, 274 P 318 (1929); *Hawkins v. Rogers,* 91 Or 483, 179 P 563, 179 P 905 (1919); and *Guthrie v. Thompson,* 1 Or 353 (1861).

We agree that this position by defendant Dale is well taken and that the trial court did not err in sustaining the defendant Dale's demurrer to the complaint on the ground that the complaint fails to state facts sufficient to constitute a cause of suit against defendant Dale for specific performance of the earnest money agreement. ORS 16.260(6).

■ It does not necessarily follow, however, that defendant Dale cannot properly be named by plaintiffs as a party to this case.

ORS 13.110 provides:

*"When new parties must be brought in.* In actions or suits the court may determine any contro-

versy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy can not be had without the presence of other parties, the court shall cause them to be brought in."

ORS 13.160 provides:

"*Permissive joinder as plaintiffs or defendants.* All persons having an interest in the subject of a suit, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided by statute. Any person may be made a defendant to a suit who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the questions involved."

See also ORS 13.170.

The question whether Dale could be properly named as a party plaintiff or defendant in this case was neither briefed nor argued by the parties. Indeed, that question was not before the trial court on defendant's demurrer under ORS 16.260(6), and a demurrer under ORS 16.260(2) for defect of parties has been held to be limited to the question whether too few parties have been joined (i.e., necessary parties omitted) rather than the question whether too many parties have been joined (i.e., misjoinder of parties). *Hunt et al v. Ketell,* 197 Or 659, 662-63, 253 P2d 272 (1953).

■ We recognize that, as a general rule, when a plaintiff elects to stand on his pleading and appeals from the sustaining of a demurrer, the affirmance of the judgment below will end the case. However, as held by this court in *Spencer v. B. P. John Furniture Corp.,* 255 Or 359, 366, 467 P2d 429 (1970):

"* * * [T]his court in the past has seen fit to adopt a special procedure tailored to avoid possible injustice to a plaintiff who has elected to appeal

from the sustaining of a demurrer but who, in fairness, should be given another chance to apply to the trial court for permission to amend. This court may, instead of only affirming the entry of the judgment in the trial court, remand the case to that court and allow the trial judge, in his discretion, to permit the plaintiff to plead further. * * *''

To the same effect, see *Coblentz v. State Ind. Acc. Com.,* 203 Or 258, 265-67, 279 P2d 503 (1955), and *Prevosky v. Fireman's Fund Ins. Co.,* 262 Or 435, 440, 499 P2d 339 (1972), and cases cited therein.

■ In our opinion, this is a proper case for the application of such a rule. If plaintiff prevails as against Amfac in enforcing specific performance of its alleged agreement to loan the funds to purchase the house, any such relief may be completely futile if Dale is no longer a party to the case in order that its rights and interests may also be determined. As previously noted, the question whether or not Dale could properly be made a party to this case could not have been determined by a ruling on the demurrer by defendant Dale that the complaint stated no affirmative cause of action against Dale.

We express no opinion on the merits of the question whether or not defendant Dale may properly be joined, as a plaintiff or defendant under ORS 13.110 or 13.160. Under the circumstances, however, we remand this case to the trial court with leave to the plaintiffs to make application to the trial court to either file an amended complaint or take such other steps as may be appropriate in order to properly raise for decision by the trial court the question whether Dale may be named by plaintiffs as a party plaintiff or defendant.[2]

---

[2] See Sweeney v. Jackson County, 93 Or 96, 109, 178 P 365, 182 P 380 (1919); Williamson v. Hurlburt, 99 Or 336, 338, 195 P 562 (1921); Hanson v. Johnson et ux, 143 Or 532, 539, 23 P2d

Reversed and remanded.

DENECKE, J., specially concurring.

I specially concur in order to state the issue which I believe the court is granting plaintiffs the opportunity to raise. I view the issue to be whether plaintiffs can file a complaint, immune to demurrer or motion, which does not state a cause of suit against Dale or does not state a cause of suit by Dale against Amfac. The court is suggesting that this may be possible because of the statutes concerning joinder of parties.

---

333 (1933); Amer. Nat. Red Cross v. Wilson, 267 Or 580, 584, 518 P2d 629 (1974). See also White v. Delschneider, 1 Or 254, 257 (1859); Strong v. Kamm, 13 Or 172, 178, 9 P 331 (1886); Wheeler v. Lack, 37 Or 238, 246, 61 P 849 (1900); Lockart v. Ferrey, 59 Or 179, 184, 115 P 431 (1911); Cantwell v. Barker, 62 Or 12, 14, 124 P 264 (1912); McGilchrist v. Fiedler, 155 Or 616, 621, 65 P2d 388 (1937); Cottrell et ux v. Prier et ux, 187 Or 454, 459-61, 212 P2d 87 (1949); Stirewalt v. Chilcott, 236 Or 128, 130, 387 P2d 351 (1963); and Barendrecht v. Clark, 244 Or 524, 528-29, 419 P2d 603 (1966).

In addition, see Clark on Code Pleading 359, 365-66, 382-83, §§ 57, 60 (2d ed 1947); James, Civil Procedure 459-61, § 10.8 (1965); 1 Pomeroy, Equity Jurisprudence 152-53, § 114 (5th ed 1941); 11 Williston on Contracts 1057, § 1452 (3d ed 1968); 5A Corbin on Contracts 169-70, § 1154 (1964); Annot., 43 ALR2d 938, 940 (1955); and 71 Am Jur 242, Contracts § 189.