# INVESTMENT SERVICE CO., *Respondent,*
## *v.*
## SMITHER, *Appellants.*
## (No. 84135, SC 24393)

556 P2d 955

*William B. Wyllie,* Salem, argued the cause and filed a brief for appellants.

*Joseph D. Robertson* of Garrett, Seideman & Hemann, Salem, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Bryson, and Lent, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff obtained a judgment against defendant Edythe E. Smither in excess of $74,985 in October, 1974, which remains unsatisfied. A writ of execution was issued on the judgment and notice of garnishment was served on the garnishee, Arthur W. Smither, as to any property in his possession belonging to defendant Edythe Smither. The garnishee made a return thereon of "nothing."

Thereafter, allegations against the garnishee were filed (ORS 29.310) alleging that on July 15, 1974, defendant Edythe Smither executed and delivered to garnishee Arthur Smither a promissory note for the sum of $64,000 together with a mortgage on her home to secure payment thereof; that the garnishee paid defendant $41,347.87 and thereafter did not pay the balance of $22,652.13 on the note. The garnishee and defendant, by stipulation, generally denied these allegations.

The trial court found that the garnishee, Arthur Smither, was indebted to the defendant, Edythe Smither, in the sum of $22,652.13 and entered judgment in favor of plaintiff and against the garnishee in this amount. The garnishee and defendant appeal.

The defendant Edythe Smither is married to Harold Smither, the son of the garnishee, Arthur Smither. Harold and Edythe Smither have, in recent years, suffered economic reversals. Because of Harold Smither's misdoings, his property has been placed under control of a receiver. Between 1969 and July, 1974, the garnishee advanced money to defendant Edythe Smither and her husband, Harold. This money was advanced by the garnishee sporadically and in differing amounts for the Smithers' living expenses, legal and accounting services and other expenses stemming from Harold and Edythe's economic difficulties.

[ 839 ]

Plaintiff does not question the amount of money advanced by garnishee to defendant and her husband and alleges in its "Allegations Against Garnishee" that:

"* * * * *.

"III.

"As of August 11, 1975, garnishee had paid to defendant directly or to others on her behalf, the sum of $41,347.87 pursuant to the Note and Mortgage.

"IV.

"As of August 11, 1975, there remained unpaid from garnishee to the defendant the sum of $22,652.13.

"* * * * *."

Plaintiff does not contend and there is no allegation or evidence of fraud on the part of the garnishee.

Garnishee and defendant contend that the court erred "in entering judgment for the plaintiff where there was no evidence to support a finding by the court that defendant's promissory note executed in favor of the garnishee created an obligation by the garnishee to pay defendant the full amount of the note on demand" and in finding that the balance payable under the note-mortgage transaction ($22,652.13) was presently due and owing to defendant by garnishee and, therefore, as a matter of law, is subject to garnishment by plaintiff.

This proceeding against the garnishee being an action at law, *Argonaut Insurance Co. v. Ketchen,* 243 Or 376, 379, 413 P2d 613 (1966), we view the evidence in a light most favorable to plaintiff. The terms and conditions of the oral loan agreement by the defendant and garnishee are in dispute.[1] The note given by

[1] The notice of garnishment served on the garnishee stated:

"YOU HEREBY ARE NOTIFIED that all property in your possession belonging to the within named defendant, Edythe E. Smither, * * * and especially that certain sum of money due Edythe E. Smither from Arthur W. Smither representing the difference between monies advanced to Edythe E. Smither by Arthur W. Smither and a $64,000

defendant to garnishee covered prior and future advancements and provided:

> "Ten years after date, for value received, I promise to pay to the order of Arthur W. Smither - - - - - Sixty-four Thousand and no/100 - - - - - DOLLARS, in lawful money of the United States of America, * * *."

It is uncontested that the value of defendant's residence, on which the mortgage was given, is approximately $40,000 and that as of the August 11, 1975, judgment debtor hearing, garnishee had advanced $41,347.87 to the defendant.

At trial the garnishee testified that any further advances were discretionary and that he had no obligation to advance any further funds to the defendant or his son.

> "Q. Mr. Smither, at the time that this note and mortgage was delivered to you, did you have some understanding about what advancements were going to be made and when?
>
> "A. Right.
>
> "Q. Would it be a fair statement that you'd agree to make advances from time to time to Harold?
>
> "A. Right.
>
> "Q. Did you have any obligation to continue making advances under your agreement?
>
> "A. No.

---

loan * * * evidenced by that certain Promissory Note and mortgage dated July 15, 1974 * * * is levied upon."

It is the sum of money due Edythe from Arthur, if any, and not the note that is levied upon. The original note was not delivered to the sheriff's possession nor introduced as evidence in this case. If a holder in due course acquired the note from Edythe to Arthur he would take it free of all defenses and the maker of the original note, Edythe, if required to pay the sum to the plaintiff, could be held by a holder in due course to pay again. This problem is discussed in Hobgood v. Sylvester, 242 Or 162, 167, 408 P2d 925 (1965), wherein we held that when a debt has been evidenced by a negotiable instrument, because of peculiar instances of negotiability, the debt cannot be attached effectively without bringing the note under the court's control, and without obtaining control of the instrument the court cannot protect the maker against double liability.

[ 841 ]

"Q. Who was to decide when and if?

"A. Me.

"Q. Was that clearly understood with Harold and Edythe?

"A. Right.

"Q. I take it it was also understood that the maximum amount that you would advance was $64,000?

"A. Right.

"Q. Have you ever refused to make any advances?

"A. Yes.

"Q. More than once?

"A. Probably.

"Q. Who is it that decides whether there will or will not be an advance?

"A. I do."

Harold Smither explained the loan agreement between the garnishee and defendant as follows:

"Q. * * * What was the arrangement between you and your father regarding this transaction?

"A. It was clear cut as I've stated on the stand at other times. The amount of money was determined as the maximum amount needed for certain projects if those projects should arise and become valid and if we could enter into them, and he would advance up to $64,000 providing that the projects did arise and create assets that would help to support the total value of the mortgage. The real property is not worth $64,000, it's worth about $40,000. It would be folly for him to give a note and take a mortgage for that sum on a piece of property worth considerably less unless the dollars were going to be used to enhance the value or the special projects that I mentioned.

"Q. Who was to determine what advances would be made and when?

"A. Arthur Smither.

"Q. Those were strictly at his discretion?

"A. Absolutely.

"* * * * *.

"Q. Does Arthur W. Smither have any obligation to make any advances at this time?

"A. No."

[ 842 ]

At the time of trial, defendant Edythe Smither was not called as a witness by either party. Her testimony at a prior judgment debtor hearing was received in evidence and was generally to the same effect as that of her husband, Harold Smither.

■ Plaintiff offered a copy (not original) of the promissory note, mortgage, and schedule of prior payments by the garnishee into evidence. Other evidence of the alleged loan agreement between garnishee and defendant was the testimony of Harold Smither taken at an April 22, 1975, judgment debtor hearing, at which time he stated:

"A [The balance of the mortgage] was in excess of $60,000. That figure, that figure was based on the *possible, possible advancement* of that amount of money from him to me, or Edythe and I for various business ventures down the line. He has not advanced that amount of money, however, so the balance of the mortgage would be the amount that he has advanced which would be between 35 and $40,000.

"He has *committed* himself, however, to the additional as we are able to put various ventures together." (Emphasis added.)

The above-quoted testimony from the transcript reveals the intention of the parties on the issue of whether the loan agreement was an unconditional and mature agreement for the garnishee to pay defendant the entire $64,000. In *Bauman v. Bauman,* 245 Or 574, 577, 423 P2d 181 (1967), we stated:

"The only legal principle applicable to guide our decision is that the language of an agreement should be interpreted to effectuate the intentions of the parties, as those intentions can be determined from the language used and other relevant circumstances."

We are required to give effect to the intention of the parties if possible. *Engesether v. Baunach,* 274 Or 153, 545 P2d 110 (1976).

■ The face amount of the promissory note and mortgage does not reveal the intention of the parties regarding the financial agreement between the

[ 843 ]

defendant and the garnishee. It is not uncommon for instruments of this nature to be drawn and executed covering future advances which are anticipated by the parties but which the lendor is not bound to make. Under such circumstances, the court will only enforce such notes and mortgages to the extent that the advances have in fact been made. *Stearns v. Mathews, Paulson,* 264 Or 94, 97, 504 P2d 105 (1972); *Rutherford v. Eyre & Co.,* 174 Or 162, 169, 148 P2d 530 (1944).

The instant arrangement between defendant and the garnishee is best characterized as a father lending financial assistance to his daughter-in-law and son during their times of economic need. The promissory note and mortgage are security for any future monetary advances which the father may deem proper and necessary to provide them.

This brings us to the garnishee's and the defendant's contention that the court erred as a matter of law in finding that the garnishee was indebted to defendant in the amount of $22,652.13 and in entering judgment against the garnishee in this amount.

Both parties agree that plaintiff, the garnisheeing creditor, stands in no better or worse position than the debtor. In *Coastal Adj. Bureau v. Hutchins,* 229 Or 418, 422, 367 P2d 430 (1961), we stated:

> "A garnishment does not give the plaintiff any greater rights against the garnishee than the defendant himself possesses, except in case of fraud. * * *"

Here, no fraud is alleged and the plaintiff's rights are limited to those possessed by defendant against the garnishee.

Property subject to garnishment is delineated in ORS 29.140 to include:

> "The rights or shares which the defendant may have in the stock of any association or corporation, together with the interest and profits thereon, and all other

property in this state of the defendant, not exempt from execution, shall be liable to be attached."[2]

In *Weyerhaeuser Co. v. Lynch,* 268 Or 142, 146, 520 P2d 351 (1974), we stated, "A granishing [sic] creditor can stand in no better position than the debtor and garnishees are held only for clearly ascertainable debts owing at the time of service of the notice."

If the debtor, Edythe Smither, brought an action against the garnishee for breach of the alleged contract to pay her the difference between the amount of the note which she executed and the amount which the garnishee had paid her, she would be limited to damages she had suffered by reason of the garnishee failing to pay her the balance of the alleged loan agreement.

Ordinarily, the damages for breach of a contract to loan money cannot be more than nominal since the money may be procured elsewhere at the same or slightly increased interest rate and without loss to the borrower. The measure of damages in such a case is the loss sustained by the borrower through the breach of the alleged agreement to loan money. For breach of a contract to loan or advance money, the measure of damages is not the amount agreed to be loaned or advanced since damages are to be limited to the losses sustained. 36 ALR 1408, 1410-412; *Schafer et al v. Fraser et ux,* 206 Or 446, 487, 290 P2d 190 (1955). Typically, the promisee of a contract to loan money cannot force the promisor to actually make the agreed upon loan. As we recently noted in *Vandeventer v.*

---

[2]ORS ch 29 was amended by Oregon Laws 1973, ch 741, to add ORS 29.020-29.075. However, these changes were made to meet the requirements of *Fuentes v. Shevin,* 407 US 67, 92 S Ct 1983, 32 L Ed 2d 556 (1971), and *Sniadach v. Family Finance Corporation,* 395 US 337, 89 S Ct 1820, 23 L Ed 2d 349 (1968), pertaining to pre-judgment remedies. ORS 29.020(4) defines "property" for the purpose of these amendments but does not control the interpretation of property as used in ORS 29.140.

*Dale Construction Co.,* 271 Or 691, 694, 534 P2d 183 (1975):

> "As contended by [defendant], it is the general rule that equity will not compel specific performance of an agreement to lend money, citing Pomeroy, Specific Performance of Contracts 131-32, § 48 (3d ed (1926).) The reason for that rule, according to Pomeroy, is that the breach of such a contract 'can always be fully compensated by damages.' "

This rule is subject to certain exceptions, none of which are applicable to the case at bar.

■ To grant plaintiff creditor, who stands in the shoes of the judgment debtor, Edythe, judgment for the face amount of the alleged loan agreement would in effect mandate specific performance under circumstances where such a remedy would not be available to the debtor. If we allowed plaintiff's judgment to stand against the garnishee we would be placing the creditor in a better position through his garnishment proceeding than the debtor would occupy.

We therefore conclude that the court erred in allowing judgment in favor of the plaintiff and against the garnishee in an amount equal to the difference between the note and the sum advanced by the garnishee.

Reversed.