## RED WING SHOE CO. v. SHEPHERD SAFETY SHOE CORPORATION.

### No. 9277.

Circuit Court of Appeals, Seventh Circuit.

Dec. 3, 1947.

Robert G. Dreffein and Louis Goldman, both of Chicago, Ill., for appellant.

John H. Bishop, Robert J. Burdett, John M. Falasz, and Bishop, Mitchell & Burdett, all of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal is from a judgment declaring a contract void for indefiniteness and uncertainty. The principal questions raised are whether a contract for an exclusive agency, if valid, obligates a manufacturer to continue to manufacture all the types of goods it made at the time the contract was entered into, and, if not valid, whether the agent designated by it is entitled to recover for alleged breaches in the manufacturer's performance during the period when the parties purported to operate under it.

The contract in controversy was entered into in December, 1933, between a shoe manufacturer and a distributor whom we shall designate as Red Wing and Shepherd. We set it forth in the margin, omitting paragraphs not here material, and abridging the names of the parties.[1]

The complaint alleges that at the time the contract was executed, appellee Red Wing was manufacturing a complete line of shoes including work, dress and safety shoes, boots, oxfords and specialty items such as golf shoes and bedroom slippers. It further alleges, and appellant denies, that shortly after the signing of the contract, the arrangement relating to prices was modified, and the parties orally agreed that the price to be paid Red Wing for all shoes should be determined by adding 6% to its estimated costs for labor and materials for safety shoes, and that Shepherd itself fixed the prices at which it sold safety shoes to its customers.

The complaint further alleged that Red Wing continued to make and Shepherd to sell the same types of shoes as in 1933 until 1941, when Red Wing's production was sharply curtailed as a result of war time restrictions and regulations; that as a result of these restrictions and controls, the shoe industry generally entered upon a program of specialization, with particular factories concentrating their entire productive capacity upon fewer and similar types and styles of shoes, and thus absorbing increased costs for labor and materials; that appellee, following this general trend, determined to eliminate several of the types and styles of shoes it had previously manufactured; that it notified Shepherd of this decision by letter of November 19, 1945, stating that it was standardizing its production and had entirely discontinued certain lines.

Correspondence attached to the bill of complaint shows that controversy developed as to the construction of the contract generally, with Red Wing asserting its right to discontinue several types and styles previously manufactured by it and sold by Shepherd, and the latter insisting upon its right

---

[1] "3. Red Wing agrees that Shepherd shall have and is hereby given, during the period of this agreement, the sole and exclusive right to sell the shoes manufactured by it to industrial concerns, industrial commissaries and the sole and exclusive right to sell the safety shoes manufactured by it to wholesalers and jobbers located anywhere, except however to the Delco Remy Corporation of Dayton, Ohio.

"4. Shepherd agrees that, during the life of this agreement, it will devote itself exclusively to the sale of shoes manufactured by Red Wing to industrial concerns, industrial commissaries, wholesalers and jobbers, excepting * * (Delco Remy). Shepherd further agrees that during that period it will not sell shoes manufactured by any other concern other than an occasional pair of dress shoes.

"5. Red Wing agrees that all inquiries and orders for shoes received by it from industrial concerns and industrial commissaries and also inquiries and orders received by it from wholesalers and jobbers for safety shoes, it will refer to Shepherd so that all sales resulting therefrom will be made through Shepherd.

"6. Red Wing agrees to carry on its floor a stock of safety shoes to adequately meet the requirements for prompt shipment to Shepherd accounts.

"7. Red Wing further agrees that it will ship and fill, at its own risk, all Shepherd orders to the customers of Shepherd named in such orders which in their judgment are good credit risks. When, in the judgment of Red Wing, accounts for which orders have been received are not good credit risks, Red Wing shall promptly notify Shepherd to that effect so that Shepherd can suitably guarantee payment * *."

Paragraphs 8 and 9 deal with the mode of settling accounts between the contracting parties.

"10. As a basis for price agreement, it is agreed that all prices on shoes quoted to Shepherd shall be on the basis of the actual cost of manufacture of the current retail line of mens shoes, manufactured and carried by Red Wing, plus the general average of profit made on said shoes and that from said price, a deduction of 20% shall be made to establish a net price to Shepherd.

"11. It is further agreed that this contract shall continue in full force and effect as long as the sales made on accounts of Shepherd amount to a yearly average of $35,000. Said sales shall be computed each year for the period commencing January 1st and expiring December 31st, of any year, and on the basis of net prices quoted by Red Wing to Shepherd."

to have all orders filled and Red Wing's obligation to carry a floor stock of safety shoes adequate to meet requirements for prompt shipment to its accounts.

By letter of February 18, 1946, Red Wing restated its intention to discontinue the lines, but agreed to fill all orders for those types and styles until June 1, 1946, in a volume equivalent to the volume previously made for Shepherd. It then, on February 19, 1946, filed suit for a declaration of its rights under the contract, asking that it be held not obligated to continue manufacture of the types and styles it made when the contract was entered into, that Shepherd was not entitled to specify the styles to be manufactured by Red Wing, that the latter's election to discontinue certain styles did not constitute a breach of the contract, assuming it to be valid, and that the notice of the election to discontinue certain styles was reasonable as to time. Appellant counterclaimed for a judgment construing the contract adversely to appellee's prayer, enjoining appellee from refusing to carry out the terms of the contract as construed by appellant, and asking for damages for alleged breach of the contract. The judgment was entered following pre-trial conference on the pleadings.

Although appellee did not, in its bill of complaint, ask to have the contract declared void, but merely to have its rights and obligations thereunder construed, on appeal it contends that the contract is void for lack of mutuality, but that if the court should not so find, then that it retained the right thereunder to determine for itself what types and styles of shoes it would manufacture.

Regardless of the validity or invalidity of the contract, we think there can be no doubt that appellee, by its terms, did not abrogate its right to determine what kind of shoes it would manufacture. The contract did not provide that Red Wing must make shoes for Shepherd to sell, but that Shepherd would, during the period of the agreement, devote itself exclusively to the sale of shoes and safety shoes manufactured by Red Wing, and that Red Wing agreed that Shepherd should have the sole and exclusive right to sell shoes manufactured by it. The promises to carry a floor stock to meet the requirements of Shepherd, and to fill and ship orders, must be read in conjunction with the description of the subject matter of the contract, which was in general terms, "shoes and safety shoes manufactued by Red Wing." Shepherd at no time bound itself to sell any amount of any particular style or type of shoe or safety shoe, hence Red Wing cannot be held obligated to manufacture any particular type or style of shoe or safety shoe. Appellant vigorously contends that this is a "service" contract. If so, then it seems clear that appellant, as the exclusive agent of appellee, was obligated to devote itself exclusively to the sale of whatever shoes its principal manufactured, instead of the latter's being compelled to continue manufacturing whatever appellant ordered. This being the case, we think Red Wing was wholly within its rights in discontinuing certain specified styles of shoes theretofore manufactured by it.

While appellee did not, in its bill of complaint, challenge the validity of the contract under which the two parties were doing business, the question arose as a result of the demand by appellant in its counterclaim for damages for alleged overcharges under the contract and for alleged breach of the contract by sales to industries and jobbers, and for loss of profits resulting from failure to fill orders unnecessarily restricted during the war period. The court found, as a matter of law, that there was no provision in the contract whereby the number, quantity, quality or price could be determined with any reasonable degree of certainty, and there was no formula by which a court could determine with any certainty the price at which the shoes were to be sold by the Shepherd Company for Red Wing, or damages for any breach by either party. Hence its finding that the contract was void for indefiniteness and uncertainty.

Appellant, on appeal, earnestly contends that the contract is a binding and enforceable one, but that even if it were not, it is entitled to recover on at least two of the claims of its counterclaim, for damages for alleged sales to customers of the four classes as to whom it was to have the exclusive agency, and for failure to comply

with the pricing formula established by the contract, during the period during which the parties purported to act under the contract.

Studying the contract as a whole we are convinced that it was not a binding and enforceable one. First, as to the term, it purported to be of indefinite duration, so long as sales made on account of Shepherd "amount to a yearly average of $35,000." This language is the subject of serious difference of interpretation by the parties. Appellee contends that it means the average between the four classes of customers referred to in the contract, with an aggregate of at least $35,000 a year. Appellant argues that it means the average between years; by its answer it contended that the contract must remain in force until 1960 by virtue of the sales made during the first thirteen years of its operation, dividing the total of those sales by $35,000, the annual average required, and taking no account of sales to be made during the balance of the period which presumably would push the termination still further into the future. And, by inference, if Shepherd's exclusive devotion to the sale of Red Wing shoes resulted in no sales whatever during that period, it would already have done enough to establish the earliest termination date at 1960, and during this time, Red Wing would be required to maintain at all times floor stocks sufficient to meet the requirements for prompt shipment of goods to fill any such orders as Shepherd might send in. Moreover, Red Wing would be required to refrain during the entire period from any sales to the four classes of customers covered by the contract as to whom it gives Shepherd exclusive rights. This contention is sufficient proof of the indefiniteness of the contract if it had no other vulnerable features. "It is not often that a promise will properly be interpreted as calling for

perpetual performance." Williston on Contracts (Rev.Ed.) section 38.

The contract is equally defective as to its terms relating to the fixing of prices which appear to us to be quite unworkable: "on the basis of the actual cost of manufacture of the current retail line of mens shoes * * (made by Red Wing) plus the general average of profit made on said shoes and that from said price, a deduction of 20% shall be * * net price to Shepherd." The contract does not explain on what basis the cost of the entire retail line plus the general average of profits is to be allocated to each item handled by the parties. Appellant argues that the language is quite clear because every manufacturing plant maintains a cost-accounting system and an accounting system whereby profits and losses in any department can be readily ascertained. That may be, but it still would not explain how the costs and profits were to be broken down to establish the actual gross price from which the net to Shepherd was to be fixed for each item ordered by it. If a contract does not specifically fix prices, it must provide a definite method for ascertaining them. United States v. Swift & Co., 270 U.S. 124, 46 S.Ct. 308, 70 L.Ed. 497. The contract involved does not provide such a method.

Cases on which appellant relies to prove that the contract is valid and binding have no bearing on the issues presented by this appeal, and language from each to the effect that doubtful language of an agreement which has been rendered certain by the interpretation placed on it by the parties does not establish the validity of this contract.[2]

Being void and unenforceable, the contract furnishes no basis for appellant's claim for damages for alleged breaches by appellee. Insofar as the parties did purport

[2] Billings v. Mounds Bldg. and Loan Ass'n, 295 Ill.App. 593, 15 N.E.2d 613, presented the question whether a voucher was to be construed as a promissory note or a matured stock certificate in the Association.

Butterick Pub. Co. v. Whitcomb, 225 Ill. 605, 80 N.E. 247, 8 L.R.A.,N.S., 1004, involved an employment contract having a fixed term and fixed salary, and the court found no lack of definiteness or mutuality in its terms.

Purcell Co. v. Sage, 200 Ill. 342, 65 N.E. 723, involved the sale of coal for a fixed term and fixed price, and the only question arose as to the meaning of "when required."

to operate under it for the thirteen year period, such performance may be said to constitute a series of fully executed orders, each complete within itself. See Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 8 Cir., 114 F. 77, 57 L.R.A. 696; Bullis v. Interstate Natural Gas Co., 5 Cir., 88 F.2d 596. It did not breathe vitality into the instrument and transform it into a valid and enforceable one. Woerheide v. Barber Asphalt Pav. Co., 8 Cir., 251 F. 196; Anderson & Brown Co. v. Anderson and Brown, 7 Cir., 161 F.2d 974. The pleadings show that orders were sent in by Shepherd to Red Wing and fully executed, including payment to both parties for their respective contribution to the execution, with no questions raised by either as to the amounts received by it. The contract provision regarding payment affords no basis for reopening that subject now.

Judgment affirmed.