450 P.2d 413

**CUNA MUTUAL INSURANCE SOCIETY, a Wisconsin corporation, and K C C Ray Plant Employees Federal Credit Union, Appellants,**

v.

**Ruth G. DOMINGUEZ, as Administratrix of Estate of John A. Dominguez, Deceased, Appellee.**

**No. 2 CA–CIV 574.**

Court of Appeals of Arizona.

Feb. 11, 1969.

Rehearings Denied March 13, 1969.
Review Denied April 15, 1969.

Lewis, Roca, Beauchamp & Linton, by James Moeller, Phoenix, for appellant Cuna Mutual Ins. Society.

Leonard N. Sowers, Kearny, for appellant KCC Ray Plant Employees Federal Credit Union.

Pinal County Legal Aid Society, Florence, by Dennis D. Jenson, Florence, for appellee Dominguez.

MOLLOY, Chief Judge.

This case arises out of an agreement by a credit union to lend money to one of its members and his wife. A portion of the loan had been disbursed when the member-borrower was killed in an accident. We must determine whether the credit union should be required to disburse the remainder of the loan proceeds, and whether life

insurance proceeds are available for its repayment.

There is no significant dispute about the facts. In early November, 1965, John Dominguez and Ruth Dominguez wished to purchase a house and lot in Superior, from Mr. and Mrs. Eugene Jaime, for a purchase price of $4,000. John Dominguez applied for membership in the KCC Ray Plant Employees Federal Credit Union and for a loan from it in that amount, plus an additional $114 for fire insurance and other necessary incidental expense. John Dominguez had previously borrowed money from the credit union, and it was willing to make the loan. However, it did not have the whole sum of $4,114 available for lending at that particular time. Because the credit union anticipated that it would have the funds available in the near future, it agreed to advance the sum of $614 initially and the remaining $3,500 in seven biweekly installments of $500 each.

The agreements between the Dominguezes and the Jaimes, on the one hand, and between the Dominguezes and the credit union, on the other hand, were reduced to writing on November 29, 1965. On that day, the Jaimes as vendors and the Dominguezes as purchasers, executed a written contract for the transfer of the house and lot upon payment of the purchase price by the Dominguezes. Payments were to be made directly to the Jaimes by the credit union for the account of the Dominguezes. The Dominguezes executed a note in negotiable form to the credit union in the principal amount of $4,114. A schedule attached to the note showed that the first $500 installment on the $4,000 purchase price and the $114 in incidental expense were disbursed by the credit union on November 29, 1965, with the remaining seven $500 installments to be disbursed on specified dates into March, 1966. The terms of the note signed by the Dominguezes required them to repay the principal with interest in 60 level monthly installments of $91.51 each. The Dominguezes also executed a mortgage on the property they were purchasing in favor of the credit union to secure payment of the $4,114 note.

On November 30, 1965, the credit union prepared and forwarded its regular monthly "Report of Coverage" to Cuna Mutual Insurance Society. Under its insurance contract, the Society insured payment of the unpaid "insurable loan balance" of a member at the time of death. Under the policy, the credit union was required to pay a monthly premium to Cuna Mutual based upon the total amount of all of its members' "insurable loan balances" outstanding at the end of the month. In calculating the total amount of outstanding loan balances on its November 30 Report, the credit union used the figure of $614 with regard to its loan transaction with the Dominguezes.

John Dominguez was killed in an automobile accident on December 3, 1965. The credit union subsequently declined to pay over any of the $3,500 which had not been disbursed at that time. Cuna Mutual paid $614 to the credit union, in connection with the Dominguez loan, contending that this was the limit of its obligation as to this loan under its policy.

Ruth Dominguez, individually and as administratrix of the estate of John Dominguez, commenced this proceeding against the credit union and Cuna Mutual, seeking to require the credit union to disburse the remaining $3,500, or a judgment in the amount of $3,500 damages in lieu thereof, and to require Cuna Mutual to pay $3,500 to the credit union in discharge of the consequent indebtedness. The Jaimes intervened, but they merely asserted, although in their own behalf, the same claim asserted by Ruth Dominguez. Proceedings in the trial court culminated in a money judgment for Ruth Dominguez, in her fiduciary capacity only, against both the credit union and Cuna Mutual. Both the credit union and Cuna Mutual appeal. There is no cross appeal by Ruth Dominguez in her individual capacity. The Jaimes are not parties to this appeal.

Both appellants assert that there was a "loan" only to the extent of $614, and that,

as to the $3,500 remaining to be disbursed, there was merely a contract to lend money in the future. The credit union calls our attention to the rule that equity will not generally enforce a contract to lend money in the future.

Before evaluating this contention, we point up the peculiar nature of this contract to lend money. This agreement was for a loan in the single amount of $4,114 for the singular purpose of financing the purchase of a home. The loan contract was executed concurrently with, and for the purpose of financing, a land purchase contract. Its purpose was well-known to the credit union. A loan of the isolated sum of $614, in view of the purpose of the transaction, was possibly valueless to the Dominguezes, and clearly not within the contemplation of the parties. The Dominguezes had, concededly, done all that was required of them in order to obtain disbursement of the entire sum. They had executed a note and mortgage in the amount of $4,114, and their loan repayment schedule was geared to their obligation to repay that amount. The Dominguezes did not even have the duty of receiving the remaining $3,500 and paying it over to the Jaimes, since it was agreed that the credit union would pay the biweekly payments directly to the Jaimes.

■ It is true, as urged by the credit union, that "* * * ordinarily a court of equity will not decree specific performance of a contract to lend money, since the remedy at law for damages is adequate." 41 A.L.R. 357. But the general rule is subject to exceptions where the borrower's remedy at law is inadequate. Jacobson v. First Nat. Bank of Bloomingdale, 129 N.J.Eq. 440, 20 A.2d 19 (1941), aff'd, 130 N.J.Eq. 604, 23 A.2d 409 (1942); Columbus Club v. Simons, 110 Okl. 48, 236 P. 12, 41 A.L.R. 350 (1925). See also City of Camden v. South Jersey Port Commission, 4 N.J. 357, 73 A.2d 55 (1950). That a loan is for the known purpose of acquiring real estate has been considered significant in granting specific performance. See Columbus Club v. Simons, supra.

■ We think that, under the circumstances here, specific performance of the credit union's agreement is justifiable under the reasoning of these "exceptional" cases.

■ We are not persuaded that the terms of 12 U.S.C.A. § 1757(8) (A), as amended, prohibit the credit union from further performing its contract to lend. The statute which enumerates "Powers" of federal credit unions, provides that "A Federal credit union shall have * * * power * * * (8) to invest its funds (A) in loans exclusively to members; * * *." In the absence of an interpretation of § 1757(8) (A) by controlling authority, which we have not found, we are not disposed to give it the effect urged by the credit union. There is no contention that the loan agreement was not lawful and binding at its inception. The statute does not specifically prohibit the completion of an initially lawful executory loan agreement with the estate of the member, in spite of the obvious fact that credit union members do not live forever. We decline to read such a prohibition into the Act, because we see no reason to do so. Accordingly, we find this particular contract to be specifically enforceable.

We now come to the question of the liability of Cuna Mutual Insurance Society. Appellee's claim against Cuna Mutual proceeds on the premise that she (as administratrix) is a third-party beneficiary of the insurance contract in effect between the credit union and Cuna Mutual. Cuna, conversely, takes the position that she is at best an incidental beneficiary.

The certificate of insurance authorized by Cuna Mutual to be issued by the credit union to its borrowers contains the following statement:

"CUNA Mutual Insurance Society * * * certifies that the Credit Union issuing pass books in which this Certificate of insurance is authorized by CUNA Mutual to appear has obtained insurance *for the benefit of its Members * * *"* (Emphasis added)

The certificate also states:

"(j) BENEFICIARY — Upon the death * * * of the Member, an amount equal to his insurable loan balance will be paid by Cuna Mutual to the Credit Union to reduce or extinguish the unpaid loan balance of the Member."

■ This certificate would appear to have been issued in pursuance of statutory requirement. A.R.S. § 20–1608, subsec. A.[1] The certificate expresses in the most explicit terms an intention to confer a direct benefit upon the borrowing members. Under these circumstances, there can be no merit in a contention that appellee, as the representative of the borrowing member, is merely an "incidental" beneficiary, or that she is not entitled to enforce the contract as a third-party beneficiary. *See* Steward v. Sirrine, 34 Ariz. 49, 58, 267 P. 598, 601 (1928), and Shreeve v. Greer, 65 Ariz. 35, 40, 173 P.2d 641, 644–645 (1946); and *compare* Seargeant v. Commerce Loan and Inv. Co., 77 Ariz. 299, 270 P.2d 1086 (1954), and Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534 (1956). It follows that the fact that the other parties to the contract have agreed upon a contrary interpretation does not affect the right of the third-party beneficiary so entitled to enforce the contract according to its terms.

■ In construing an insurance contract, the court is obligated to resolve ambiguities in favor of the insured and to give undefined words in the policy a "common sense" meaning such as the average layman would give them. Malanga v. Royal Indemnity Company, 101 Ariz. 588, 591, 422 P.2d 704, 707 (1967). We are here concerned with these words:

"CUNA Mutual Insurance Society

\* \* \* \* \* \* \* \* \* \* \*

"WILL PAY TO THE

"KCC RAY PLANT EMPLOYEES FEDERAL CREDIT UNION
RAY, ARIZONA

\* \* \* \* \* \* \* \* \* \* \*

*"the amount remaining unpaid at the time of death* * * * on any insurable loan balance up to a maximum of $10,000.00 * * *

\* \* \* \* \* \* \* \* \* \* \*

"(b) The payment of a monthly premium of $.065 per $100.00 for *all insurable loan balances* of the Credit Union to be paid within the first fifteen days of the next calendar month following the execution of this Contract and within the first fifteen days of each subsequent month * * *

\* \* \* \* \* \* \* \* \* \* \*

"GENERAL PROVISIONS

\* \* \* \* \* \* \* \* \* \* \*

"Insurable Loan Balance    The insurable loan balance is the *total loan balances* of Members owing to the Credit Union, up to a maximum of $10,000.00 for each Member, and for which a premium has been paid or is payable during the time this Contract is in effect * * *"

(Emphasis added)

———◆———

1. "Each coverage of credit life insurance and credit disability insurance shall be evidenced by an individual policy or, in the case of group insurance, by a certificate of insurance. The individual policy or group certificate of insurance shall be

Cuna takes the position that, under this verbiage, the "insurable loan balance" was $614 at the time of death, because this was the amount "owing." We do not agree. Under this contract, there never was an agreement to borrow or lend $614. There was no contract to repay the sum of $614. The Dominguezes undertook to repay $4,114, plus interest, all in installments of $91.51 per month.

There is no express contingency in this contract that the loan would not be made if one of the borrowers should die before the full amount of the loan was disbursed. Nor is there a showing of a constructive condition to this effect. *See* Restatement of Contracts § 253. The law does not lightly construe conditions into contracts that the parties have made for themselves. T. D. Dennis Builders, Inc. v. Goff, 101 Ariz. 211, 214, 418 P.2d 367, 370 (1966).

The second disbursal of $500 under this loan contract was to be made to the Jaimes on December 17, 1965. The first monthly payment under the note was due on December 25, 1965. Hence, disbursal of the second $500 was a condition precedent, as a matter of law, before the credit union could have recovered even the first monthly payment. *See* Restatement of Contracts §§ 266 and 269.[2]

So, in one sense at least, there was no amount "owing" to the credit union "at the time of" Mr. Dominguez' death. But is that the meaning of the word here? We think not. If these funds had been advanced by the credit union, as promised, and if there were no monthly payment yet due at the time of the death of Mr. Dominguez (as happened to be the case—death having occurred twenty-two days before the first payment was due), could it be argued that the amount insured by this policy was zero?

We think no reasonable man would so construe this contract. Necessarily, then, this contract refers to that which must be paid in the future under the existing contract of loan.

This line of reasoning, while not conclusive, leads us closer to regarding the $4,114, the only amount which the Dominguezes contracted to pay, as the "total loan balance" of this loan contract at the time of Mr. Dominguez' death. Further conducive to such a conclusion is the definition of "loan" found in A.R.S. § 20–1603(7), as amended: "* * * an advance *or commitment of certain funds pursuant to a repayment agreement*" (emphasis added). This definition is a part of Article 10 of Chapter 6, Title 20, A.R.S., passed for the purpose of comprehensively regulating "* * the issuance and transaction of all credit life insurance * * * " A.R.S. § 20–1601, as amended.

Finally persuasive towards this result are the poignant facts which have induced this court to regard the loan contract as being specifically enforceable. On occasion, the law, usually under the alias of "equity," will regard that which should be done as being done. Smith v. Tang, 100 Ariz. 196, 412 P.2d 697 (1966); Lebrecht v. Beckett, 96 Ariz. 389, 396 P.2d 13 (1964). Here, the only thing undone as far as this loan is concerned is the lack of payment of the balance of the amount agreed to be loaned, and this through no fault of the borrower. All in all, we believe it is an appropriate time for the law to exercise prevision, with a converting lens.

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.

---

delivered to the insured debtor in person or by mail within thirty days subsequent to the effective date of coverage."
A.R.S. § 20–1608, subsec. A, as amended.

2. It is, of course, possible for the credit union to advance a restitution theory for recovery of its $614 in partial performance, but it would recover only what it could show to have been the "net benefit" to the Dominguez estate. Restatement of Contracts § 357. The facts do not establish a net benefit here; if this loan is not consummated, it seems at least probable that the borrowers will receive no benefit from this partial performance.