NEAL A. McERLEAN, Plaintiff-Appellant, *v.* UNION NATIONAL BANK OF CHICAGO, Defendant.—(THE FIRST SUBURBAN BANK OF OLYMPIA FIELDS, Defendant-Appellee.)

First District (2nd Division)    No. 79-2427

Opinion filed November 25, 1980.

1142

Michael James Frost, of Chicago, for appellant.

Randall E. Server and Mary F. Stafford, both of Chicago (Epton, Mullin, Segal & Druth, Ltd., of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

In counts II and III of a five-count amended complaint in chancery, plaintiff Neal A. McErlean sued defendant First Suburban Bank of Olympia Fields[1] (hereinafter "Suburban") for breach of an oral and written contract to extend to McErlean a line of credit of up to $100,000, for breach of a fiduciary relationship established between him and Suburban. McErlean appeals from the dismissal of his amended complaint and the denial of leave to file a second amended complaint. He also appeals from a subsequent order dismissing the first appeal and denying him an extension of time within which to file the record on appeal. We affirm.

Realleging certain allegations contained in count I, and pleading further, in count II McErlean asserted, *inter alia*, that: on July 15, 1976, he applied to Suburban for a loan of $20,000 to start a carpentry company and pay off various notes; submitted to Suburban a personal financial statement; was told that Suburban would extend a loan not to exceed $50,000 if he assigned to it his beneficial interest in a land trust; proposed to Suburban that he would only assign the beneficial interest for a line of credit of up to $100,000; Suburban agreed "to this contract"; McErlean and his wife then transferred to Suburban their beneficial interest in a certain land trust as collateral for the proposed line of credit; his wife signed a guarantee of loans not to exceed $100,000; one of Suburban's officers told him that his credit checked out perfectly, and the bank would extend to him the $100,000 line of credit; he borrowed $20,000 on August 12, 1976, "in accordance with the terms of the agreement"; and, on or about August 26, 1978, Suburban refused to extend additional credit to him and thereby "breached its [oral and written] contract." McErlean concluded count II with a prayer for specific performance of the contract and money damages.

In count III, McErlean alleged, in addition to pleading over the facts hereinbefore stated, that the terms of the contract entered into between the parties established a fiduciary relationship of confidence and trust,

---

[1] Union National Bank, the named defendant in counts I, IV and V, is not a party to this appeal.

and that Suburban's refusal to extend to McErlean additional funds beyond the $20,000 constituted interference with his protected interest, fraud, and a violation of the aforementioned relationship of trust and confidence. Actual and exemplary damages and attorney's fees were therein requested.

Certain exhibits were attached to the amended complaint, among which were the following: an assignment of beneficial interests in a First National Bank of Blue Island trust agreement to Suburban, signed by McErlean and the vice president of Suburban, as collateral security for a certain note payable to the order of Suburban in the amount of $100,000 dated August 5, 1976[2]; a personal guarantee of loans "to the extent of $100,000 with interest at the rate of ____% per annum," signed by Isabelle McErlean, to enable Neal McErlean to obtain said extent of credit; a promissory note in the sum of $20,000 at 9% interest per annum, payable to Suburban, dated August 12, 1976, payable February 9, 1976, and signed by Neal McErlean; and a letter from Suburban to McErlean dated August 26, 1976, stating Suburban had learned that consummation of the loan would precipitate the Union Bank (another lender) to demand payoff on McErlean's present borrowings from Union Bank, and that Suburban would therefore not advance additional money until McErlean submitted current financial statements of all corporations in which he was involved and a copy of his 1975 Federal income tax return.

Suburban moved on July 27, 1977, to strike and dismiss the amended complaint for failure to state a claim for either legal or equitable relief. On March 2, 1979, the trial court allowed Suburban's motion and dismissed the complaint. McErlean then moved to reconsider and vacate the order of dismissal and for leave to file a second amended complaint. No draft of a proposed second amended complaint was proffered to the court. The court denied this motion on April 16, 1979.

A notice of appeal was filed by McErlean on May 16, 1979. Pursuant to Supreme Court Rule 309(3) (Ill. Rev. Stat. 1979, ch. 110A, par. 309(3)), Suburban moved to dismiss the appeal on November 21, 1979, because McErlean had not timely filed the record on appeal nor requested an extension of time in accordance with Supreme Court Rule 326 (Ill. Rev. Stat. 1979, ch. 110A, par. 326). On that same date, McErlean moved for and was given leave to file a motion to extend time to file the record instanter. In his motion, McErlean stated that he had been unable to complete a praecipe or file a record on appeal because the documents in his file were not date stamped, he could not locate the court file, and he was unable to prepare a praecipe by reviewing Suburban's files. He further stated that he had advised Suburban of his problem, and that he

---

[2] Significantly, no such note appears to have been drawn or expected by McErlean.

promptly filed a praecipe on November 16, 1979, after the court record had been located on November 2, 1979. The court granted Suburban's motion to dismiss. Although Rule 309(3) previously authorized a trial court to dismiss an appeal for failure to file the record on appeal after expiration of the time periods delineated in Supreme Court Rule 326, an amendment, adopted July 30, 1979, and effective October 15, 1979, eliminated subsection (3). Therefore, on November 21, delay in filing the record was no longer a ground for dismissal by the circuit court. Ill. Ann. Stat., ch. 110A, par. 309, Supplement to Historical and Practice Notes, at 321 (Smith-Hurd Supp. 1980).

■■ McErlean's motion to extend the time for filing of the record on appeal made in the trial court on November 21, 1979, should have been timely made in the reviewing court (see *In re Estate of Meirink* (1957), 11 Ill. 2d 561, 144 N.E.2d 591, and *First Finance Co. v. Ross* (1965), 64 Ill. App. 2d 474, 211 N.E.2d 588). His suggestion of extenuating circumstances in that he was unable to locate the court record is unpersuasive for several reasons. He had access to Suburban's files and could have consulted the circuit court docket and register, from which he could have prepared a praecipe. He had the right to move the reviewing court for an extension of time pursuant to Rule 326, which he neglected to do. He could have moved the circuit court for restoration of the missing record in the intervening time (see, *e.g.,* Ill. Rev. Stat. 1977, ch. 116, par. 1 *et seq.*). Restoration here would have been facilitated by the fact that there was no report of proceedings to reconstruct. McErlean's contention that he did not pursue any of these alternatives because Suburban was advised of the situation and never objected is insufficient. Notwithstanding the foregoing however, under amended Rule 309, the trial court was without authority to dismiss the appeal. We elect to consider the case on its merits. See *People v. Marbly* (1980), 85 Ill. App. 3d 935, 937, 407 N.E.2d 721; *Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.

■■ The dismissal of the lawsuit was correct and must be affirmed. The amended complaint did not state a cause of action for specific performance or damages as it failed to allege a loan commitment sufficiently definite to constitute an enforceable agreement. It is clear that McErlean was to sign a personal note for any amounts actually borrowed before Suburban gave him any money. When he subsequently borrowed $20,000, such a note was executed. Although the assignment of the beneficial interest in the Blue Island Bank trust refers to it, no allegation appears in the amended complaint charging that McErlean ever signed such a note for a loan of $100,000, and no such exhibit is annexed to the complaint. No document purporting to be a contract to loan McErlean $100,000 has been otherwise pleaded or attached to the amended complaint as an exhibit. Allegations appear in the amended complaint to the effect that an

officer of Suburban would "* * * extend to him [McErlean] a line of credit not to exceed * * * [$100,000]" (amended complaint, count II, par. 14), and that the parties "* * * had entered into a contract both oral and written * * *" (amended complaint, count II, par. 17) for that line of credit. The alleged "extended line of credit" appears to be a reflection of language in the personal guaranty signed by Isabelle McErlean in the form of a request that Suburban "* * * extend from time to time to said Debtor such credit as said Bank may deem proper * * * to the extent of [$100,000] * * *." No elements of a contract cognizable in law or equity as to the essential terms of such a contract appear in the guaranty or elsewhere, nor are any such elements pleaded. These terms would include, for example, the intended duration of the line of credit; the applicable rate of interest to be charged for any loan emanating from such an agreement, or the basis for how such interest would be ascertained; what duration or date or dates were contemplated for maturity of such loans; and what mode or rate of repayment was contemplated, *i.e.*, whether the entire amount would be repayable or if repayment in installments would be acceptable. (See, *e.g., Fleming v. Parkview Colonial Manor Investment Co.* (1975), 31 Ill. App. 3d 6, 8, 333 N.E.2d 587.) The absence of such material elements from the allegations of the amended complaint or any of the exhibits attached, as well as the absence of any bases from which inferences with respect to them can be drawn, impel the conclusion that McErlean has failed to allege an enforceable contract. *Lee Shell Co. v. Model Food Center, Inc.* (1969), 111 Ill. App. 2d 235, 250 N.E.2d 666.

In *Willowood Condominium Association, Inc. v. HNC Realty Co.* (5th Cir. 1976), 531 F.2d 1249, suit was brought alleging a breach of a contract or commitment to make a loan. The alleged contract failed because there were no specifications in two letters from a commercial lender as to how and when interest on a $4.7 million loan would be adjusted or paid and the method of disbursement and repayment of principal were left unresolved. Even though the parties in *Willowood* agreed upon a floating interest rate, the interest provision was considered too vague to support a contract. These omitted terms were deemed major and material in *Willowood* in contrast with McErlean's contention that they are minor and may be determined by what is customary and reasonable. In other contexts, the cases reveal that the specification of the interest rates to be charged is significant, if not the *sine qua non*, of a contract to loan money. See, *e.g., Illinois ex rel. Lignoul v. Continental Illinois National Bank & Trust Co.* (N.D. Ill. 1975), 409 F. Supp. 1167, 1178, *aff'd in part, rev'd in part* (7th Cir. 1975), 536 F.2d 176; *Independent Bankers Association of America v. Smith* (D.C. Cir. 1976), 534 F.2d 921, 948.

■■ In reviewing and analyzing a challenged complaint, properly pleaded allegations and well pleaded facts must be taken as true and admitted in the face of a motion to dismiss for the purposes of the motion; however, broad allegations that a contract exists, or that a line of credit would be extended, or that the parties had entered into a contract both oral and written, in the absence of supporting facts, are mere legal conclusions. (*Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 864, 866, 341 N.E.2d 101; *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 638, 274 N.E.2d 153, *appeal denied* (1971), 49 Ill. 2d 575.) No allegations are expressly pleaded, nor can any be implied, in the instant complaint as to the material terms to which we have previously referred, particularly, interest, duration and terms of repayment. In light of these significant omissions, we find no error in the dismissal of the amended complaint insofar as it purports to plead an oral, or partially oral and partially written, contract to loan money in the future.

■■ McErlean maintains that the assignment of beneficial interest in the Blue Island Bank trust and the personal guaranty submitted made the line of credit irrevocable and unconditional. Generally, equity will not countenance an action for specific performance of agreements to lend money in the absence of exceptional circumstances. (See, *e.g., Cohn v. Mitchel* (1885), 115 Ill. 124, 131, 3 N.E. 420; 5A Corbin, Contracts §1152 (1964).) McErlean apparently alludes to exceptions to that rule, usually recognized in construction loan cases, where, in reliance upon the promise to loan money in the future, the putative borrower substantially changes position. (See Annot., 82 A.L.R.3d 1116, 1121-29 (1978).) As we have noted, it is evident that no money was to have been loaned unless and until personal notes for specific amounts were executed; no such notes are alleged to have been negotiated, except for the $20,000 note previously referred to, for which McErlean concededly received his money. Further, as the facts in the more persuasive cases demonstrate, the agreements to loan money in the future have been found specifically enforceable in cases not only where there has been a substantial change of position, but also where the initial agreement contemplates the terms upon which future agreements will be consummated. (See, *e.g., Vandeventer v. Dale Construction Co.* (1975), 271 Ore. 691, 534 P.2d 183: agreement to make VA approved loan in the sum of $29,850 at 7% per annum for 30 years; *Leben v. Nassau Savings & Loan Association* (1972), 40 App. Div. 2d 830, 337 N.Y.S.2d 310, *aff'd* (1972), 34 N.Y.2d 671, 312 N.E.2d 180: mortgage commitment obligating defendant to loan a specific sum at 6% interest per year for a period of 30 years; *Cuna Mutual Insurance Society v. Dominguez* (1969), 9 Ariz. App. 172, 450 P.2d 413: agreement to loan $4,114, interest and principal to be payable in specific monthly installments for a term of 60 months; *City of Camden v. South*

*Jersey Port Com.* (1950), 4 N.J. 357, 73 A.2d 55: $8,250,000 to be disbursed at 4% interest per annum payable in annual installments.) The absence of proposed interest rates and duration of the loan agreement alleged by McErlean in the instant case precludes either the application of any exception to these facts, or the recognition of any contract which would sustain an action for its breach. To hold otherwise would require the fact finder to make a contract for the parties, the essential elements of which they themselves have not seen fit to provide. *Pollack v. Marathon Oil Co.*; *Kraftco Corp. v. Koblus*; *Willowood Condominium Ass'n v. HNC Realty Co.*; *Illinois ex rel. Lignoul v. Continental Illinois Nat'l Bank & Trust Co.*; *Independent Bankers Ass'n v. Smith*.

■■ Contrary to McErlean's further insistence that the advancement of $20,000 made to him by Suburban, on which he paid interest at 9%, constitutes part performance sufficient to cure the irregularities of the agreement under the facts alleged in the amended complaint, the advance having constituted a completed transaction within itself, the terms of the note therein executed do not apply, nor are they alleged to have extended, to any other loan to be made or to any other future agreement. (See *Red Wing Shoe Co. v. Shepherd Safety Shoe Corp.* (7th Cir. 1947), 164 F.2d 415, 418-19.) The effort on appeal to convert the alleged agreements into an option which was accepted by the part performance of the loan for $20,000, misses the mark. An option is also a contract and is similarly required to contain the essential attributes of a contract. (*Friedman v. Development Management Group, Inc.* (1980), 82 Ill. App. 3d 949, 952, 403 N.E.2d 610.) No option contract was pleaded in the amended complaint, nor is any reference to an option contract to be found in any of the exhibits attached thereto. The authorities cited with respect to option contracts are inapposite to the circumstances of this case. Nor are we able to find any similarity between the documents relied upon, or allegations made, in the amended complaint which resemble an hypothecation agreement for which McErlean now contends so as to bring this case within the authority cited with regard to the effect of such an instrument.

■■ The allegations contained in paragraphs 19 and 20 of count III of the amended complaint simply charge that "\* \* \* the terms of the contract entered into between plaintiff and Suburban established a fiduciary relationship; and a relationship of confidence and trust \* \* \*" which was violated by Suburban's failure to grant loans to the extent of $100,000. Fiduciary relationships may arise where confidence is reposed by one party in the other party who exercises domination and influence, such as between attorney and client, principal and agent, or other like relationships as developed by facts and circumstances alleged. (*In re Estate of Nelson* (1971), 132 Ill. App. 2d 544, 551, 270 N.E.2d 65.) We find nothing

inherent in business dealings between lender and borrower from which springs a cognizable fiduciary relationship in the absence of facts or circumstances pleaded from which such a connection may be inferred. The dismissal of count III, therefore, was also proper.

■■ Both parties agree that McErlean was denied leave to amend his first amended complaint, although no explicit mention of the denial was made in the trial court's order. The record contains no transcript of the hearing on the motion. No second amended complaint was tendered for the court's consideration effectuating a cure of the defects in the first amended complaint. The trial court cannot be held to have abused its discretion in denying McErlean's leave to amend under these circumstances. (*Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 404 N.E.2d 406.) Further, leave to amend is properly denied where, as here, it is apparent that plaintiff will be unable to plead a viable cause of action. *People ex rel. Council 19 v. Egan* (1977), 52 Ill. App. 3d 1042, 1045, 368 N.E.2d 481.

For the foregoing reasons the judgment of the circuit court of Cook County dismissing the cause of action must be affirmed.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING*

Mr. JUSTICE DOWNING delivered the opinion of the court:

Aero's petition for rehearing raised a technical point regarding the opinion's reference to the trial court's resolution of whether Casati's agency to sell was revocable at will. (See section II, part B.) This supplemental opinion addresses that point.

Aero contends this court's reference to the trial court's finding of a contract irrevocable at Aero's will misconstrued that finding as one of fact. Aero claims the trial court's finding was one of law but, nevertheless, incorrect because the record indicates the contract was severable.

We note at the outset that Aero never raised or anticipated on appeal the issue of contract severability. Rather, Aero contended by implication

---

\* The original opinion is found at 90 Ill. App. 3d 530.

that the only irrevocable agency was one coupled with an interest. Aero did not recognize law holding that a partially performed bilateral contract breached prior to the time for full performance supports recovery of the profits contracted for by the injured party be he an agent or otherwise. See *Lake Shore & Michigan Southern Ry. Co. v. Richards* (1894), 152 Ill. 59, 80, 38 N.E. 773; *Izzo v. City of Loves Park* (1959), 20 Ill. App. 2d 117, 125, 155 N.E.2d 312; see generally 11 Williston, Contracts §§1301, 1397 (3d ed. 1968).

Part B of section II reasons that the instant contract, bilateral at the time petitioner removed the property from the market, was supported by Casati's consideration and therefore was not revocable at will. Casati's consideration was to solicit tenants and buyers. The "bonus" money was to be paid upon presentation of an unconditional buyer. Aero concedes Casati's employment to supervise construction was predicated upon $15,000 compensation. The record, however, is silent as to whether Casati's consideration in the form of solicitation was to be compensated solely from the $15,000, or from the "bonus" money, or both. The nonseverable nature of Casati's consideration, and compensation therefor, establish a contract of agency which is not revocable at will. *Andros v. Hansen Realty Co.* (1976), 44 Ill. App. 3d 635, 639, 358 N.E.2d 664.

■■ The trial court's conclusion that the contract was not revocable at will is supported by the record. Such a determination necessarily went beyond the four corners of the contract. Our opinion recognizes the determination as one of fact which is reviewable in light of the manifest weight of the evidence. Although our treatment of the issue in part B is brief, our citation of authority adequately indicates our opinion that Casati's consideration was not severable and, therefore, was sufficient to support an irrevocable agency to sell. That agency to sell was breached by Aero. Accordingly, the doctrine of anticipatory repudiation is an appropriate theory under which Casati may seek recovery. We hereby deny Aero's petition for rehearing.

Aero's petition for rehearing denied.

STAMOS and PERLIN, JJ., concur.