**In re DESTRON, INC., Debtor.**

**CHURCHILL CABINET CO., Plaintiff,**

**v.**

**CONTINENTAL ILLINOIS NATIONAL BANK & TRUST CO., Defendant.**

**Bankruptcy No. 83 B 7380.**
**Adv. No. 83 A 2720.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 3, 1986.

Danuta Bambenista Pavich, Mayer, Brown & Platt, Chicago, Ill., for Continental.

Abraham N. Goldman, Abraham N. Goldman & Assoc., Ltd., Chicago, Ill., for Churchill.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter came before the court on the motion of the defendant, Continental Illinois National Bank and Trust Co. ("Continental"), for summary judgment. The court, having considered the pleadings and memoranda filed herein, as well as the documents, affidavits and exhibits submitted therewith, does hereby grant defendant's motion for summary judgment.

## THE FACTS

The debtor, Destron, Inc., was a manufacturer of coin-operated gaming devices. In May, 1982, Destron purchased virtually all of the assets of Gaming Devices, Inc. ("GDI") from X–COR International, the parent of GDI. At the time of the purchase, GDI was indebted to Continental for approximately $600,000.00. In order to fund Destron's purchase of the assets of GDI, Continental loaned Destron $600,000.00 which was used to pay off GDI's loan at Continental. Additionally, Continental loaned Destron an additional $695,000.00 in working capital between June and August, 1982. In September, 1982 Continental ceased funding Destron. Destron became over-extended and on June 13, 1983, filed for protection under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). Pursuant to Court order dated October 24, 1985 converting the case to one under Chapter 7 and appointing a trustee, Destron has been in the process of liquidation.

The plaintiff, Churchill Cabinet Company ("Churchill"), is a manufacturer of wood cabinets used to enclose video games. Destron was a customer of Churchill both before and after the purchase of GDI by Destron. Prior to May, 1982, Destron had a credit limit of $50,000.00 with Churchill. In order to fund its increased manufacturing capacity due to the purchase of GDI, Destron sought additional credit from Churchill.

In June, 1982, Roger Duba, President of Churchill, contacted Continental, Destron's bank. Richard Alston, the officer at Continental responsible for Destron's account, informed Duba that Continental had provided a substantial loan to Destron to finance the acquisition of GDI and that Continental intended to continue to fund Destron's expansion. Duba then decided to raise Destron's credit limit at Churchill and by June, 1983, Destron owed Churchill $123,000.00. After Continental ceased funding Destron in September, 1982, Destron was confronted with serious cash flow problems which led to its filing of its Chapter 11 petition on June 13, 1983.

On November 4, 1983, Churchill filed this two-count adversary complaint. Count I alleges that Continental breached an oral contract with Churchill when it failed to provide Destron with sufficient funds to meet its working capital needs. Alternatively, Count I alleges that Churchill was a direct third-party beneficiary of the financing agreement between Destron and Continental. In Count I, Churchill seeks between $73,000.00 and $123,000.00 in actual damages plus costs of the suit.

In Count II, Churchill contends that Continental breached a tort duty of care allegedly owed plaintiff, when it made "unconditional promises and guarantees" to fund debtor's expansion, which it thereafter failed to honor. Plaintiff requests punitive and actual damages of $300,000, plus costs,

occasioned by its reasonable reliance upon the representations made by defendant in June of 1982.

## JURISDICTION

Since the debtor is now only peripherally involved in this dispute, the court initially examines its jurisdiction to enter a final order in this case. The court's jurisdiction over bankruptcy cases and related matters is derived from 28 U.S.C. §§ 157 and 1334. Section 1334(a) grants to the district courts original and exclusive jurisdiction of all cases under Title 11. 28 U.S.C. § 1334(a). In addition, the district courts are granted original, but not exclusive jurisdiction of all cases arising in or related to a case under Title 11. 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), all bankruptcy matters in the Northern District of Illinois have been referred to the Bankruptcy Judges of this district by the General Order signed by the Chief Judge of the District Court for the Northern District of Illinois dated July 10, 1984.

Having jurisdiction over bankruptcy cases and related matters, however, does not automatically give the bankruptcy judge jurisdiction to enter final orders. Pursuant to § 157(b)(3), this court must determine whether the proceeding before it is a core or non-core proceeding. 28 U.S.C. § 157(b)(3). Core proceedings are those which arise in or arise under Title 11. 28 U.S.C. § 157(b)(1); L. King, *Collier on Bankruptcy*, ¶ 3.01 at 3–26 (15th ed. 1985). In core proceedings, bankruptcy judges may enter final orders which are thereafter appealable to the district court pursuant to § 158. 28 U.S.C. § 158.

Non-core proceedings are "those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or a state court." *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984). Non-core proceedings are those which are related to a case under Title 11, but do not arise in or arise under Title 11. *In re Boughten*, 49 B.R. 312, 314 (Bankr.N.D.Ill.1985). In non-core or related proceedings, the bankruptcy judge is to submit proposed findings of fact and conclusions of law to the district court where any final order or judgment is to be entered. 28 U.S.C. § 157(c)(1). Proceedings under § 157(c)(1) are subject to *de novo* review by the district court. However, if the parties consent, a bankruptcy judge may in a non-core proceeding enter a final order or judgment which is subject to appeal to the district court under § 158. 28 U.S.C. § 157(c)(2).

It is clear that the instant case does not arise in or arise under Title 11. It is therefore a non-core proceeding. Churchill has not objected to the court's jurisdiction to hear this matter. Indeed, Churchill has filed pleadings urging that this Court does have subject matter jurisdiction. Earlier in these proceedings Continental filed a motion objecting to this Court's jurisdiction. This court issued an order on April 10, 1984 in which it found that it could properly exercise subject matter jurisdiction. *In re Destron, Inc.*, 38 B.R. 310 (Bankr.N.D.Ill. 1984). Since the Court now grants Continental's motion for summary judgment, it is assumed that Continental consents under § 157(c)(2). Thus, the parties are deemed to have consented to the court's jurisdiction and, pursuant to § 157(c)(2), this court can enter a final order and judgment subject to review by the district court under § 158. 28 U.S.C. § 157(c)(2); *In re Energy Savings Center, Inc.*, 54 B.R. 100, 102 (Bankr. E.D.Pa.1985). The court also has personal jurisdiction over the parties by virtue of their failure to make a proper objection. Rule 12(h)(1), Fed.R.Civ.P.

## DISCUSSION

### I.

The defendant's motion for summary judgment was brought pursuant to Bankruptcy Rule 7056 which applies Rule 56, Fed.R.Civ.P., to summary judgment actions in adversary proceedings.

The primary purpose of a motion for summary judgment is to avoid an unnecessary trial and Rule 56 is the procedural device for promptly disposing of actions in

which there is no genuine issue of material fact. *Mintz v. Mather's Fund, Inc.*, 463 F.2d 495 (7th Cir.1972). Federal Rule 56(c) states that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c) Fed.R.Civ.P. Therefore, the first inquiry the Court must make is whether, based on the pleadings, memoranda, affidavits and other materials, there exists a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. *U.S. v. O. Frank Heinz Construction Co.*, 300 F.Supp. 396, 399 (D.C.Ill.1969).

Churchill argues that Continental's motion for summary judgment is premature because the deposition testimony of Duba, upon which Continental relies, has not been certified or signed by the witness. Churchill has had ample opportunity to correct any discrepancies which might appear in Duba's deposition. The deposition was taken on April 29, 1985 and May 20, 1985. Rule 30(e), Fed.R.Civ.P., states that if a deposition has not been signed within 30 days of its submission to the witness, the deposition may then be used as if it were signed.

The plaintiff has had over six months to review the deposition and put to the deponant any additional questions which it may have. Since the witness is the plaintiff's president, there is no palpable excuse for the plaintiff's counsel not to have access to its own client. In fact, while the plaintiff urges the court to disregard the portions of Duba's deposition used by Continental in its submissions, it discriminately has Duba certify as correct that portion of his deposition which the plaintiff wants to use. *See* Plaintiff's Rule 12(e) Counter-statement. The court holds Duba's deposition admissable for purposes of Continental's summary judgment motion.

Churchill also argues that summary judgment is improper because there remain genuine issues of material fact. Churchill mistakes questions of law for questions of fact. The material facts are not in dispute. What the parties do dispute is the application of the law to those facts. Since there is no dispute as to any material fact which would preclude the Court from reaching a decision as a matter of law, summary judgment is appropriate. Facts and inferences drawn from the record will be viewed in the light most favorable to the party opposing the motion. *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## II.

With respect to the merits of the controversy, Churchill advances four separate theories of possible recovery, namely, contract, third-party beneficiary, promissory estoppel and tort.

### A. CONTRACT

Churchill alleges that an oral contract existed between Continental and Churchill, which was entered into during a telephone conversation between Duba and Alston in which Alston assured Duba that Continental intended to continue to fund the working capital needs of Destron. Churchill alleges that when Continental ceased funding in September, 1982, Continental breached its contract with Churchill.

The essential elements of a contract, all of which must be present, are offer, acceptance and consideration. *Martin-Trigona v. Bloomington Federal Savings and Loan Association*, 101 Ill.App.3d 943, 57 Ill.Dec. 348, 428 N.E.2d 1028 (1981). Although not clearly stated in its complaint, Churchill alleges that a contract was somehow entered into between Churchill and Continental when Churchill offered to supply wood cabinets to Destron in return for Continental's promise to fund Destron. There is a basic flaw in Churchill's theory. In order to constitute either offer or acceptance, there must be a meeting of the

minds between the parties establishing the essential elements of the bargain. *Loeb v. Gray,* 131 Ill.App.3d 793, 86 Ill.Dec. 775, 779, 475 N.E.2d 1342, 1346 (1985). The minimum elements necessary to establish a contract to lend money are the amount, the interest rate, the duration of the loan and the method of repayment. *McErlean v. Union National Bank of Commerce,* 90 Ill.App.3d 1141, 46 Ill.Dec. 406, 410, 414 N.E.2d 128, 133 (1980). It is uncontested that Alston, the agent of Continental, never agreed with Duba, the president of Churchill, to lend Destron a specific amount of money[1] over a specified period at a specified interest to be repaid under specified terms.[2] Alston's statement to Duba that Continental intended to fund the working capital needs of Destron is simply insufficient to form a contract between Continental and Churchill. Churchill puts forth no other basis for the existence of a contract. The Court will address the question of whether there was adequate consideration in *Section C, infra.* Therefore, Continental's motion for summary judgment will be granted as to Churchill's direct contract claim.

### B. THIRD PARTY BENEFICIARY

 Churchill claims that it was a third-party beneficiary of a contract between Continental and Destron and that Continental breached its contract with Destron, thereby damaging Churchill. Assuming, arguendo, that a contract existed between Continental and Destron and that Continental breached that contract, Churchill must show that it was an intended third-party beneficiary of the contract. *Midwest Concrete Products Co. v. LaSalle National Bank,* 94 Ill.App.3d 394, 49 Ill.Dec. 968, 970, 418 N.E.2d 988, 990 (1981); *David v. J. Elrod Realtors of Devon, Inc.,* 75 Ill. App.3d 449, 31 Ill.Dec. 381, 383, 394 N.E.2d 583, 585 (1979).

Nothing in the record supports any finding that Churchill was an intended third-party beneficiary of any contract between Continental and Destron. At most, Churchill was only an incidental beneficiary. This is not enough to sustain its claim. *Dale v. Groebe & Co.,* 103 Ill. App.3d 649, 59 Ill.Dec. 350, 431 N.E.2d 1107 (1981); *Midwest Concrete Products, supra* 414 N.E.2d at 990; *Realtors on Devon, Inc., supra,* 394 N.E.2d at 585. Therefore, Continental is entitled to judgment as a matter of law and its motion for summary judgment will be granted as to Churchill's claim based on a third-party beneficiary theory.

### C. PROMISSORY ESTOPPEL

 Promissory estoppel is used as a substitute for consideration where all the other elements of a contract are present and one party has performed based on a reasonable reliance on the promise of another who then refuses to perform his part and claims a defense of lack of consideration. Under the doctrine of promissory estoppel, a party may be obligated to the terms of an agreement absent consideration, where to do otherwise would create an injustice. *Bank of Marion v. Robert "Chick" Fritz,* 57 Ill.2d 120, 311 N.E.2d 138, 140 (1974). Under the theory of promissory estoppel, the non-performing party is estopped from claiming a defense of lack of consideration for his failure to perform.

---

1. Continental did in fact loan Destron $1,300,-000.00. It is unclear exactly for what amount Churchill would contend Continental obligated itself on the basis of a telephone conversation.

2. The following is taken from Duba's deposition transcript at pages 54–55.

Q. Did Mr. Alston tell you how long Continental Bank was committing itself to lend money to them?
A. No.

Q. And I take it that beyond the statement that Continental Bank was going to adequately fund—or provide adequate working capital to Destron, that he did not specify what he considered to be adequate working capital?
A. No.
Q. And I take it he did not tell you anything in terms of what the interest rate would be?
A. No.
Q. Or what the repayment terms by Destron would be?
A. No.

Since promissory estoppel is merely a substitute for consideration, the doctrine offers no help to Churchill. The other elements of a contract must also be present. As discussed in Section II, A, *supra,* the other elements, in particular, identifiable terms sufficient to establish an offer and acceptance, are completely lacking. Promissory estoppel does not establish a contract, but is merely a substitute for consideration. It is true, as Churchill points out, that "each case must depend upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution." *Carson Pirie Scott & Co. v. Parret,* 346 Ill. 252, 178 N.E.2d 498, 501, (1931). It is equally true that, given the facts in this case, there was never a meeting of the minds between Churchill and Continental sufficient to form a binding contract between the two parties.

Churchill asks the Court to enforce a non-existent contract. By Duba's own testimony, the telephone conversation between Duba and Alston, the only contact Duba had with Continental and the only time a contract could have been formed between Churchill and Continental, lacks the necessary meeting of the minds to form a contract even if Churchill could successfully use a promissory estoppel theory. Therefore, Continental's motion for summary judgment will be granted as to Churchill's claim based on a promissory estoppel theory.

## D. TORT

Churchill alleges that Continental breached its duty of care to Churchill when it negligently promised Churchill that it would fund Destron and then failed to do so. As stated earlier, Continental did fund Destron to the extent of $1,300,000.00 and then subsequently took a substantial loss on those loans. The Court can find no duty which Continental owed Churchill other than to refrain from intentional or negligent misrepresentation.

As a matter of law, statements regarding future intentions do not give rise to a cause of action for either intentional or negligent misrepresentation. *Buzzard v. Bolger,* 117 Ill.App.3d 887, 73 Ill.Dec. 140, 453 N.E.2d 1129 (1983); *Bank of Lincolnwood v. Comdisco, Inc.,* 111 Ill.App.3d 822, 67 Ill.Dec. 421, 444 N.E.2d 657 (1982). Therefore, Continental's motion for summary judgment as to Count II will be granted.

IT IS THEREFORE ORDERED that Continental's motion for summary judgment on Counts I and II of Churchill's complaint is granted.