838 F.2d 739
 Jeff BEAN, Individually and as Managing General Partner for
White Rock Texas Joint Venture, A Texas General
Partnership, Plaintiff-Appellant,
v.
INDEPENDENT AMERICAN SAVINGS ASSOCIATION, et al.,
Defendants-Appellees.
 No. 87-1961.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 11, 1988.
 
 Allan B. Diamond, Kim J. Askew, Dallas, Tex., for plaintiff-appellant.
 Martin Griffin, David P. Blanke, Dallas, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before POLITZ, JOLLY and HIGGINBOTHAM, Circuit Judges:
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 Jeff Bean's pending appeal asserts that the district court erred in denying a preliminary injunction to prevent Independent American Savings Association, F.S.A., from foreclosing real estate that secured a loan IASA made to Bean. Because IASA has threatened to foreclose and sell the property before we determine the merits of the appeal, Bean asks us to preliminarily enjoin the foreclosure. Bean argues that he is likely to prevail on appeal in that the district court incorrectly concluded that it lacked jurisdiction under North Mississippi Savings & Loan Ass'n v. Hudspeth, 756 F.2d 1096 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986), even though the named defendant was not in receivership. For the reasons that follow, we enjoin foreclosure pending appeal.
 
 
 2
 * Jeff Bean and a partnership he manages, White Rock Texas Joint Venture, are real estate developers. Bean obtained financing from Independent American Savings Association, a federally insured savings and loan, for the construction of a shopping center in Lewisville, Texas. As part of the deal, Bean executed and delivered a promissory note in favor of IASA for $6,450,000, secured by the property on which the shopping center was to be built. The relationship between IASA and Bean soured in 1986, and Bean failed to make payments on the note. The parties began negotiations to modify the Lewisville agreement as well as loan agreements involving two other properties, one known as "White Rock" and the other "Landmark."
 
 
 3
 In May, 1987, the Texas State Savings and Loan Commissioner and the Federal Home Loan Bank Board declared IASA insolvent and appointed the Federal Savings & Loan Insurance Corporation as its receiver. The FSLIC immediately transferred assets and liabilities of IASA, including the promissory notes on the properties, to a new federal savings and loan association chartered by the FHLBB. This new entity is known as Independent American Savings Association, F.S.A.; we will refer to it as "New Federal."
 
 
 4
 After the FHLBB's intervention, New Federal and Bean continued their negotiations. In December, 1987, however, New Federal posted the properties for a foreclosure sale to be held January 5, 1988. Contending that an agreement had been reached before the posting and that New Federal had acted in violation of state law, Bean sued in Texas state court naming New Federal as a defendant and requesting the state court to enjoin the foreclosure. The suit did not name IASA, the institution in receivership, as a defendant.
 
 
 5
 Before the state court ruled, New Federal removed the suit to the federal district court in Dallas, invoking the jurisdictional provisions of 28 U.S.C. Sec. 1441(b) and 12 U.S.C. Sec. 1730(k)(1). On December 16, 1987, the United States District Court denied Bean's request to preliminarily enjoin foreclosure, finding that it lacked subject matter jurisdiction. Bean requested that we enjoin foreclosure pending appeal of the denial of a preliminary injunction.
 
 
 6
 In response to Bean's motion, New Federal notified this court that it had removed the foreclosure postings for January 5, and asked that the request for preliminary injunction be denied as moot. Bean contended that the injunction was still necessary because the foreclosure posting could be renewed at any time.
 
 
 7
 On January 12, and while its suggestion of mootness was pending, New Federal notified Bean that the properties had been reposted and scheduled for foreclosure sale on February 2. After Bean renewed his request for an injunction and moved for sanctions, counsel for New Federal wrote to inform the court that the new posting "was inadvertent, and has been withdrawn."
 
 II
 
 8
 Bean's request for a preliminary injunction meets each of the requisites given in Canal Authority v. Callaway.[1] First, Bean and White Rock are likely to prevail on the merits of their appeal. While we obviously venture no opinion as to the merits of the underlying state-law suit, the merits of the district court's jurisdiction to issue an injunction are fairly clear.
 
 
 9
 The district court found that the case was controlled by North Mississippi Savings & Loan Ass'n v. Hudspeth,[2] in which we held that federal statutes give the FSLIC exclusive jurisdiction to resolve claims against failed savings and loan institutions in receivership with the FSLIC.[3] Hudspeth interpreted 12 U.S.C. Sec. 1730(k)(1), which deems certain suits involving FSLIC receiverships to arise under federal law, and thus permits their removal to federal court.[4] The jurisdictional grant, however, contains an exception:
 
 
 10
 [A]ny action, suit, or proceeding to which the [FSLIC] is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States.
 
 
 11
 Even in cases properly removable, however, 12 U.S.C. Sec. 1464(d)(6)(C) limits the power of a court to interfere with the FSLIC's administrative determination of claims against a failed institution. The statute reads:
 
 
 12
 Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the [FHLBB], restrain or affect the exercise of powers or functions of a conservator or receiver.
 
 
 13
 In Hudspeth, the FHLBB appointed the FSLIC as receiver for the Old North Mississippi Savings & Loan. As in this case, the FSLIC transferred substantially all the assets and liabilities from Old North to a newly chartered institution, New North. However, the FSLIC decided that New North would not assume an existing employment contract between Hudspeth and Old North. This contract was already the subject of a state-court suit by Hudspeth for a declaration that it was enforceable. When Hudspeth amended his complaint to name New North as defendant, the FSLIC removed the case to federal court and obtained dismissal on the basis of the FSLIC's primary jurisdiction to resolve such claims as receiver.[5]
 
 
 14
 We determined that the case could be removed to federal court because New North was not an "investor, creditor, or stockholder" of the institution in FSLIC receivership, Old North.[6] However, because a claim against New North would have restrained the FSLIC's exercise of its powers as receiver of Old North, we found it was precluded by Sec. 1464(d)(6)(C).[7]
 
 
 15
 The district court likely erred in applying Hudspeth to the present case. To begin with, if the district court dismissed Bean's claim because removal was improper, that was an error. In this case, as in Hudspeth, the claims are being brought against a new entity that has assumed the assets and liabilities of the institution in FSLIC receivership; the claim is not against the former institution itself.[8] Hence, removal is proper here just as it was in Hudspeth.
 
 
 16
 This case is different than Hudspeth, however, with regard to the application of Sec. 1464(d)(6)(C). To understand why, it is important to note that when the FHLBB appoints the FSLIC as receiver for a failed institution, the FSLIC has at least two distinct options. One course the FSLIC can take is to pay insurance to the institution's depositors and liquidate the institution's assets.[9] On the other hand, the FSLIC can also choose an entirely different course, under which the assets and liabilities of the failed institution are not liquidated and paid but rather are transferred to a new institution, of which the FSLIC is not receiver.[10] Allowing a bypass of administrative remedies is a direct interference with the FSLIC's function under the first course, since the process of liquidating the institution's assets and paying creditors involves the setting of priorities for claims.
 
 
 17
 In some, but not all situations under the FSLIC's second course, concurrent court proceedings may have the same effect. In Hudspeth, for example, the FSLIC had determined not to have the new entity assume the very liability that was the subject of Hudspeth's claim. As we noted,
 
 
 18
 The FSLIC, in working out the terms of the transfer between Old North and New North, essentially acted as a liquidator. It allocated the demands of competing claimants to Old North's limited assets by, in effect, relegating two classes of claimants--Old North stockholders, and Hudspeth--to second-priority status, leaving for satisfaction of their claims only the right of Old North to reacquire from New North any claims for officer malfeasance.[11]
 
 
 19
 Here, by contrast, there are no administrative remedies to exhaust; the priority of Bean's claim against New Federal has not been set by the FSLIC. Indeed, the agency determined that New Federal would assume IASA's existing agreements with Bean. We disagree with the district court that even though New Federal was not in FSLIC receivership, concurrent court proceedings would impede the FHLBB's ability to use the assumption and transfer method to rehabilitate a failed institution. Rather, as the FSLIC has argued before another court, by transferring a liability or asset the FSLIC has determined that claims related to it should not be switched to the administrative track:
 
 
 20
 Because FSLIC arranges for the assumption of a closed institution's liabilities and contractual relationships by a new institution and transfers substantially all of the closed institution's assets to that institution, there is no necessity for a formal claims process to determine the validity and priority of creditors' claims or to oversee the distribution of the proceeds of the liquidation of the institution's assets. Instead, the business of the closed institution is continued by the "purchasing and assuming" institution, which deals with contract obligations and creditor claims in the courts as a private litigant.[12]
 
 
 21
 As to the second factor justifying preliminary relief, we agree with the district court that Bean faces irreparable injury should IASA foreclose before we have determined the merits of the appeal. Because Bean stands to lose interests in real property, which we presume are unique, there is no adequate post-foreclosure remedy that could substitute for injunctive relief.
 
 
 22
 We recognize that in most situations the mere threat of foreclosure, without the actual institution of proceedings, does not constitute imminent harm sufficient to justify an injunction.[13] Nevertheless, we are persuaded that on the facts of this case the threat of foreclosure is sufficiently real to support equitable relief.
 
 
 23
 The last two factors, balance of hardships and the public interest, militate for neither party. Because the first two factors strongly favor Bean, however, an injunction is appropriate.
 
 III
 
 24
 It is ordered that Appellant's motion for preliminary injunction pending appeal is GRANTED, on condition that Appellants post bond with the clerk of the court in the amount of $20,000, in a form approved by Appellees or failing agreement, in a form approved by this court. Appellants' motion for sanctions is denied.
 
 
 
 [1]
 489 F.2d 567, 572 (5th Cir.1974), see also Ruiz v. Estelle, 650 F.2d 555 (5th Cir.1981)
 
 
 [2]
 756 F.2d 1096 (5th Cir.1985), cert. denied, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). The Seventh Circuit adopted our position in Lyons Savings & Loan Ass'n v. Westside Bancorporation, Inc., 828 F.2d 387, 394-95 (7th Cir.1987), despite the contrary approach adopted by the Ninth Circuit in Morrison-Knudsen Co. v. CHG Int'l, Inc., 811 F.2d 1209 (9th Cir.1987). We note that the Supreme Court has before it at least two certiorari petitions addressing the Hudspeth rule. See Zohdi v. FSLIC, no. 87-255, filed Aug. 5, 1987; FSLIC v. Stevenson Assoc., no. 87-451, filed Sept. 17, 1987
 
 
 [3]
 We have followed Hudspeth on many occasions. See Chupik Corp. v. FSLIC, 790 F.2d 1269 (5th Cir.1986) (per curiam); FSLIC v. Bonfanti, 826 F.2d 1391 (5th Cir.1987); Coit Indep. Joint Venture v. Firstsouth, F.A., 829 F.2d 563 (5th Cir.1987) (per curiam); Godwin v. FSLIC, 806 F.2d 1290 (5th Cir.1987); Red Fox Indus., Inc. v. FSLIC, 832 F.2d 340 (5th Cir.1987). We have not, however, defined the scope of our review after completion of the administrative process. While the Ninth Circuit has recognized that deferential review might be inconsistent with article III, see Morrison-Knudsen, 811 F.2d at 1221-22, this kind of challenge is not ripe for review until the administrative process is complete, see Coit, 829 F.2d at 564-65
 
 
 [4]
 As we noted in Hudspeth, the FSLIC is considered to be a "party" to a suit involving the institution even though the FSLIC neither intervenes nor is formally joined. See 756 F.2d at 1100
 
 
 [5]
 Id. at 1099-1100
 
 
 [6]
 Id. at 1100
 
 
 [7]
 Id. at 1101-02
 
 
 [8]
 See id. at 1100
 
 
 [9]
 See 12 U.S.C. Sec. 1729(c)(3)(B). An example of this approach is found in Godwin, 806 F.2d at 1291-92
 
 
 [10]
 See 12 U.S.C. Sec. 1729(f)
 
 
 [11]
 Hudspeth, 756 F.2d at 1102
 
 
 [12]
 "FSLIC's Memorandum Regarding Subject Matter Jurisdiction" at 4-5, Forman v. Talman Home Federal Savings & Loan Ass'n (D.N.J.1987) (No. 86-3119)
 
 
 [13]
 Cf. Chacon v. Granata, 515 F.2d 922, 925 (5th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975); Belcher v. Birmingham Trust National Bank, 395 F.2d 685 (5th Cir.1968)