**SUN VILLAGE FARMS, a California partnership, Plaintiff,**

v.

**The BOWERY SAVINGS BANK, a New York savings bank, Defendant.**

**No. CIV 89–1705 PHX WPC.**

United States District Court, D. Arizona.

March 5, 1990.

William M. Lukens, Donald F. Drummond and David F. Feingold, San Francisco, Cal., Michael Gallagher, Phoenix, Ariz., for plaintiff.

Robert Palmer, Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, Senior District Judge.

On December 15, 1989, Plaintiff Sun Village Farms filed a Motion for Preliminary Injunction to enjoin a pending foreclosure sale of property located in Surprise, Arizona. This Court temporarily granted the Plaintiff's Motion and ordered further briefing on the matter. The Court indicated that it would construe the remaining pleadings as a Motion to Quash the Preliminary Injunction. After further briefing and argument, the Court took the matter under advisement and now rules on the Motion to Quash the Preliminary Injunction.

## I. *Factual Background*

The Bowery and Sun Village entered into an agreement in 1984 (hereafter referred to as the "original agreement") whereby the Bowery agreed to loan $34.6 million to Sun Village and Sun Village's principal, Mr. Cavanaugh, for the purchase and development of property in Surprise, Arizona. The Bowery agreed to make interim payments of this loan amount and there were special considerations given to Sun Village regarding repayment dates and interest rates. In 1985, the parties signed a Modification Agreement which lessened the loan amount, changed the payment terms and changed the ownership interests of Mr. Cavanaugh and the Bowery in the property.

The Bowery contends that the Modification Agreement followed a review of the Bowery's financial status conducted by the Federal Deposit Insurance Corporation ("FDIC"). Following its review, the FDIC required the Bowery to divest itself of equity interests in real estate developments in exchange for financial assistance from the FDIC. The Bowery then entered into negotiations with Mr. Cavanaugh to relinquish its ownership interest and to modify the $34.6 million loan agreement.

The signed, modified agreement contained the following changes: (1) Mr. Cavanaugh and his entities acquired a joint venture interest in the property; (2) the loan changed to a non-recourse loan between the Bowery and Sun Village; (3) the loan amount was reduced to $23.7 million; (4) a loan payment of $4 million was made and another $4 million was due 3/15/87 with the balance being paid no later than March 15, 1989; (5) a $4 million letter of credit was required of Sun Village which was to be backed by a promissory note executed by a third party; and (6) the Bowery agreed to lease about ⅓ of the property back to Sun Village.

The Bowery contends that, included with the agreement reached with the FDIC, (hereafter referred to as the "Assistance Agreement"), the FDIC conditioned its financial assistance upon the retention of supervisory control over the Bowery. The Bowery claims that the FDIC required that any bills over $5,000 must be approved by the FDIC before payment.

Sun Village made the requisite first two payments specified in the Modification Agreement. However, the March 15, 1987 payment was not made. The Bowery notified Sun Village of the default and indicated that foreclosure proceedings would begin unless a payment, together with late charges and interest, was made.

Following March 15, 1987, Sun Village's principal, Michael Cavanaugh, proposed that the Bowery obtain an interest in other property owned by Sun Village in lieu of the requested $4 million payment. Workout negotiations began, however, the par-

ties were unable to reach a final agreement.

Sun Village argues that, prior to March 15, 1987, it submitted a request for loan advance, consistent with its previous practice, and The Bowery refused to fund the advance. Sun Village claims that this refusal constituted the first breach of the Modification Agreement and, therefore, Sun Village was under no obligation to make the $4 million payment on March 15, 1987.

The Bowery contends that its failure to make an interim advance payment resulted from Sun Village's refusal to supply necessary documentation. The Bowery argues that Sun Village was required to supply documentation to the FDIC to account for the draw request. Sun Village was told of the need to supply additional documentation and never provided the necessary detail. Due to Sun Village's failure to provide documentation, the interim payment could not be made, The Bowery did not refuse to fund a draw request and could not, therefore, be in breach of the Modification Agreement.

Sun Village has requested that the Court declare the rights and obligations of the parties under both the original and Modification Agreements. Sun Village also requests that the Court declare the Modification Agreement void for want of consideration, thereby reinstating the original agreement.

The Bowery noticed a foreclosure sale on the property to be held on January 17, 1990. Sun Village filed the Motion for Preliminary Injunction to enjoin this sale. On January 5, 1990, the Court granted a temporary preliminary injunction in order to more fully consider the parties' arguments and allow for the completion of briefing. On that same day, the Court informed the parties that it would construe the response and reply pleadings as a Motion to Quash the Preliminary Injunction.

## II. *Preliminary Injunction Standard*

In construing the pleadings as a Motion to Quash the Preliminary Injunction, the Court must determine whether Sun Village has met the requisite standard to warrant the continuance of the Injunction. In this Circuit, Sun Village is required to show "either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in its favor." *Hunt v. National Broadcasting Corp.*, 872 F.2d 289, 292 (9th Cir.1989). Sun Village's showing of irreparable harm increases as the probability of success on the merits decreases, and vice versa. *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987). If the balance of hardships sufficiently favors Sun Village, the preliminary injunction should continue even if the questions raised in the matter are only "serious enough to require litigation." *Briggs v. Sullivan*, 886 F.2d 1132, 1143 (9th Cir.1989) *citing, Arcamuzi v. Continental Airlines*, 819 F.2d 935, 937 (9th Cir.1987).

The Courts are normally reluctant to grant equitable relief on a contract to loan money since damages are usually an adequate remedy. However, if the loan is taken for the purpose of acquiring real estate, equitable relief may be obtained. *Cuna Mutual Ins. Society v. Dominguez*, 9 Ariz.App. 172, 450 P.2d 413 (1969). The action presently before the Court requests a declaration of the rights and obligations of the parties and a determination of the validity of both the original and modified agreements. Under each of the agreements, Sun Village negotiated for the loan of money to acquire and develop property in Surprise, Arizona.

## III. *The Property*

Sun Village, in negotiating with the Bowery, sought to purchase and develop a 928–acre parcel located in Surprise, Arizona, west of Sun City. Prior to any development, the acreage was operated as a citrus grove and the vast majority of the property remains a citrus grove.[1] Sun Village

---

1. At argument the parties agreed that at least some small portion of the property was in the

claims that in the six years since the parties' original agreement, it has expended money to develop a four-lane thoroughfare, the neighboring property has been built out and the surrounding area is a "successful and attractive residential community." *See* Declaration of Michael S. Cavanaugh in Support of Plaintiff's Motion for Preliminary Injunction ("Cavanaugh Declaration") at 17. Sun Village hoped to develop this property into a total of "3,424 affordable dwelling units, 100 acres of land for industrial use, 117 acres of commercial property, 10 acres for sewage treatment and approximately 100 acres for community recreational purposes." *See* Cavanaugh Declaration at 4. Shortly before purchasing the property, a road improvement project began and Sun Village was required to fund a portion of the assessment costs of the improvement. Cavanaugh Declaration at 6. Sun Village was also required to pay maintenance costs totaling $45,000 per year. *Id.*

## IV. *Analysis of the Merits*

The Original and Modified loan documents between The Bowery and Sun Village do not contain a provision requiring FDIC approval for the payment of the interim draw requests. This Court is restrained from giving effect to the "approval provision" of the Assistance Agreement due to the fact that it is not referenced within the Original or Modification Agreements and the meaning of the contract can be determined from the four corners of either of those agreements. *United Cal. Bank v. Prudential Ins. Co.,* 140 Ariz. 238, 258, 681 P.2d 390, 410 (App.1983). There being no reference to the Assistance Agreement, the FDIC approval provision cannot be unilaterally imposed upon Sun Village, at least with the evidence presented to date.

The Bowery argues that Sun Village's refusal to supply additional documentation to the FDIC was the reason for the Bowery's refusal to fund the draw request. This argument completely ignores Sun Village's evidence that the FDIC approval

term was not negotiated, not a part of the parties' agreement and yet was unilaterally imposed upon Sun Village. Despite The Bowery's arguments to the contrary, this imposition may very well be a material aspect of the parties' agreement and the matter should be left for the trier of fact.

The Bowery argues that Sun Village was required, pursuant to the Modification Agreement, to provide documentation to support the interim loan advance requests. In fact, the parties' agreement contains such a term. However, Sun Village was only required to provide reasonable documentation to *The Bowery* and it is quite possible that the parties conduct in previous draw requests, waived some or all of the documentation requirement. *See United Cal. Bank,* 140 Ariz. at 266, 681 P.2d at 418 (The parties' conduct, after knowledge of the terms and prior to any controversy as to meaning, will be given great weight.) The fact remains that Sun Village was subjected to an additional requirement—one for which it did not negotiate and one which may be viewed as material in light of the nature of the parties obligations. *See United Calif. Bank v. Prudential Ins. Co.,* 140 Ariz. at 277, 681 P.2d at 430 ("A party's insistence upon terms which are not contained in a contract constitute an anticipatory repudiation thereof."); *REA Express, Inc. v. Interway Corp.,* 538 F.2d 953, 955 (2d Cir.1976). The failure to fund the interim draw request cannot be deemed a minor breach in light of the very purpose behind the loan agreements. In this matter, The Bowery was obligated to make interim draw requests in order to sustain the continued development. Sun Village's obligations followed from The Bowery's funding. To now claim that the failure to perform one of the very bases of the agreement was a minor breach, ignores the facts and purpose of the agreement. This is so despite the fact that the interim draw request amounted to less than one percent of the entire loan agreement.

If the Court denied Sun Village's request to continue the preliminary injunction enjoining the foreclosure sale, the property

midst of development. The vast majority is

maintained as a citrus grove.

would be listed for sale in foreclosure proceedings. Sun Village's interest would be completely lost. If Sun Village should later prevail at trial in its argument that The Bowery placed additional, non-negotiated terms into the Modification Agreement, the Court could only award damages for past payments made towards the property as well as any other damages specifically shown.

If the Court rules that the preliminary injunction should continue, thereby denying the Court-construed Motion to Quash the Preliminary Injunction, the property would remain in its present condition. Should The Bowery prevail at trial, it could, at that time, foreclose on the property.[2]

The Court finds that maintaining the status quo is the more appropriate remedy. Despite the decline in the State's real estate market, there has been insufficient evidence presented to date which supports The Bowery's arguments that immediate foreclosure is necessary.

The Bowery claims that Sun Village cannot show that it was ready, willing and able to perform on March 15, 1987 and, therefore, it is not entitled to claim an anticipatory repudiation. Sun Village has submitted an affidavit in support of its argument that it was ready to perform by making the March 15, 1987 payment. *See* Supplemental Declaration of Michael S. Cavanaugh at 3. The Court cannot conclude, with the evidence presented, that a claim of anticipatory repudiation is without merit. *United Cal. Bank*, 140 Ariz. at 277–281, 681 P.2d at 435–39. The conflicting evidence presented must be decided by a trier of fact. *Id.*

In this matter, the Court finds that the balance of hardships sufficiently favor Sun Village and the questions raised by the pleadings are substantially serious, requiring litigation. *Briggs v. Sullivan*, 886 F.2d at 1143; *Arcamuzi v. Continental Airlines*, 819 F.2d at 937. In the event Sun Village prevailed at trial and this Court

allowed the foreclosure sale to continue, the loss of interest in the property is irreparable and one for which money provides no adequate remedy. *Bean v. Independent American Savings Ass'n*, 838 F.2d 739, 743 (5th Cir.1988). Further, Sun Village has established that the issues it raises are sufficiently serious and the evidence presented conflicts to a point that litigation is necessary to resolve the issue. Therefore,

IT IS ORDERED:

1. Sun Village's Motion for Preliminary Injunction (construed as The Bowery's Motion to Quash the Preliminary Injunction) is Granted.

2. The preliminary injunction entered on January 4, 1990 shall remain in full force and effect pending a determination of the merits of the Plaintiff's claims.

3. The Bowery, the current holder of the property, shall perform all acts necessary to maintain the property in its current condition, utilizing prudent agrarian practices.

4. Finding that the current value of the property meets or exceeds the amount of money due the Bowery, Sun Village is not required to post a security bond and the Bowery's request for bond is Denied.

---

**2.** The parties agree that the terms of the loan provide no additional recourse in the event Sun Village wrongfully failed to make the March 15, 1987 loan payment. Therefore, the only reme-

dy available to The Bowery would be to foreclose on the property and obtain whatever the market will bear.